FRANK E. HODGKINS & another *vs.* ISAAC FARRINGTON & others.

Suffolk.   March 28, 29, 1889. — September 5, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Equity — Real Estate — Revocable License — Laches — Equity Practice — Decree.*

The owner of land who erects a building thereon and inserts its timbers into a wall on land of an abutter, with his oral permission, is a mere licensee; and a successor in title of such abutter, upon discovering the encroachment within twenty years from the giving of such permission and requesting the then owner of the building to remove the timbers, is entitled upon a bill in equity thereupon filed by him to a decree authorizing him to make such removal at his own expense, and to an injunction, unless, within a brief time to be named in the decree, the owner of the building shall himself make the removal; and such relief will not be refused on the ground that the plaintiff has been guilty of laches, or that he declines to sell a strip of land under the wall or to grant an easement therein.

BILL IN EQUITY, filed March 19, 1888, by the plaintiffs, as the owners of an estate on Hanover Street in Boston, against Isaac Farrington, the owner of an adjoining estate, the Suffolk Savings Bank for Seamen and Others, the mortgagee of such estate, and the administrator of James W. Johnson, the lessee of a large portion thereof, for the removal of that part of a building belonging to the defendant Farrington which stood upon the estate of the plaintiffs, and for damages. The case was heard by *Field,* J., who reserved it for the consideration of the full court. The material facts appear in the opinion.

*R. M. Morse, Jr. & C. S. Hamlin,* for the plaintiffs.

*W. B. French,* for the defendants.

DEVENS, J.   In 1841 the premises of the plaintiffs were owned by Robert Burr, and those of the defendant Farrington by Noah Blanchard, a house standing on the front part of each lot with a yard in the rear.   On August 1 of that year, the boundary line between their respective lots was established by a straight line that ran " through the centre of the brick wall separating the two houses, and by the northeasterly side of a wall separating the two yards."   The brick garden wall which separated the two yards. was fifty-four feet in length and eight inches thick, with the exception of a twelve-foot section which was twelve inches thick.   Ten inches in thickness of the twelve-foot section was on the plaintiffs' land, and two inches on that of the defendant, the remainder of the garden wall being wholly on the plaintiffs' land.

In September, 1871, Robert Burr having deceased, his widow and his son, Robert Burr, Jr., became his executors, with power to mortgage, sell, or lease his real estate.   By the will of Robert Burr, Mrs. Burr was the owner in fee of one third of this parcel of real estate, having a life estate in the other two thirds, the fee in which was in his children.   It was agreed orally by Robert Burr the younger and his mother, that James W. Merriam, who then owned the Blanchard estate, and who desired to extend his building, might top out the garden wall and let his timbers into the same as thus built up, but that it must remain a part of the Burr estate.   Burr supposed, although no agreement to this effect was shown, that Merriam would line the old wall four inches in width on his own land, and, although he might on inquiry have ascertained, did not in fact know that Merriam did not make the wall twelve inches in width, and thus carry it up.   It does not appear that Burr was in any way intentionally deceived as to this matter by Merriam, who underpinned and carried up the garden wall to the requisite height (a part of his extension being four stories in height) and inserted his timbers therein, adding nothing to the width of the wall on his own land.

The defendant Farrington claims title through several mesne conveyances from Merriam.   The deed to him, the mortgage to

the savings bank, and the lease to Johnson, whose administrator was made a defendant as well as the savings bank, exclude in their description all that portion of the wall alleged by the plaintiffs to be theirs, nor has either of them repaired or interfered with the wall, but the timbers have been allowed to remain where they were inserted therein.

We cannot perceive that the defendants can have any higher rights in this matter than those of licensees. Even if the Burrs, by their authority as executors, or Mrs. Burr, by her ownership in fee of one third of the estate and her life tenancy in the other two thirds, could have created an interest in the real estate, 'they did nothing which could bind the Burr estate, or subject it to an incumbrance when it became the property of another. A paramount right to hold another's land subject to a particular purpose, to enter upon it, or to maintain structures upon it without the consent of the owner, is an important interest in the land which cannot pass without the formalities required by the statute. Rev. Sts. c. 59, § 29; c. 74, § 1 (Pub. Sts. c. 78, § 1; c. 120, § 3). An oral license to do any act on the land of another does not trench upon the policy of the law, which requires that contracts respecting any title or interest in real estate shall be by deed or in writing. It gives the licensee no estate or interest in the land. It excuses acts done which would be trespass, or otherwise unlawful. It is revocable, not only at the will of the owner of the property on which it is to be exercised, but by his death, by alienation or demise of the land by him, and by whatever would deprive the original owner of the right to do the acts in question, or give permission to others to do them. *Cook* v. *Stearns*, 11 Mass. 533. *Stevens* v. *Stevens*, 11 Met. 251. *Clapp* v. *Boston*, 133 Mass. 367.

To the rights of licensees the defendants are entitled. Before there had been any alienation of the land by the Burrs, the structure of Merriam was completed. It has been maintained during the successive changes of title, without any objection by the respective owners of the plaintiffs' estate to the additional erection on the wall, or to its use as a support to the defendant Farrington's building, until, very shortly before the bringing of this bill, the plaintiffs notified Farrington to remove the timbers resting on their land. The plaintiffs, when they acquired title,

knew the situation of the wall, and the support of the timbers therein, and that the wall, with the exception of the two inches in thickness of the twelve-foot section, was on their land. Under these circumstances, before the defendants could be treated as trespassers, they were entitled to know that the permission received from or assented to by former proprietors of the plaintiffs' estate was withdrawn, and that they could no longer rely on any license. That which a licensee has already done does not become unlawful by the revocation of the license, if it be an act done on the premises of the licensor, as if he has erected a structure thereon, but the licensee loses his right to continue to maintain it.

The erection of the superstructure on the wall, in the case at bar, by Merriam, and the insertion of the timbers therein, were not unlawful when constructed, but the defendants have lost the right to continue them. If they do not remove them, the plaintiffs have the right to do this or have it done, even if serious injury thereby results to the defendants. The fact, if it be so, that the plaintiffs will suffer no substantial injury if the wall remains as it is, while the defendants will suffer a heavy loss if the wall is removed, and they are thus compelled to take out their timbers and erect a new wall on their own land to support their building, cannot give them a right to use the plaintiffs' property, if they have no legal interest therein.

In *Stevens* v. *Stevens, ubi supra,* the defendants' grantor erected a dam on the land of the plaintiffs' grantor. The plaintiffs subsequently acquiring title to the land, notified the defendants to remove it, and, the notice being disregarded, commenced its removal. While the plaintiffs were thus engaged, the defendants entered and restored so much of the dam as had been removed, making some additions to it. A bill in equity was then brought to have the dam abated as a nuisance. It was held that, while for several years the defendants had enjoyed the privileges allowed by their license before the same was countermanded by the plaintiffs, they were not responsible for any acts done by them in pursuance of said license and permission; that they were not, therefore, liable to pay any expenses for the removal of the old dam, although the same might be removed by the plaintiffs. So far as they had built a new dam,

or repaired and made additions to the old one after the license was countermanded, the defendants were held liable, and the plaintiffs were deemed entitled to have the same abated at the expense of the defendants.

It is said, in the case at bar, by the defendant Farrington, that it is enough for him to establish the fact that the addition to the wall was lawfully erected, and the timbers of his building lawfully inserted, and that this will be a sufficient answer to the plaintiffs' bill as framed. He, by his answer denying the allegations of the plaintiffs' bill, practically asserts his right to have the wall maintained as it now exists, and to keep his timbers inserted therein. The plaintiffs are not compelled, in the assertion of their rights, actually to remove or to attempt to remove the wall and timbers, and thus to encounter the danger of a collision with the defendants. When their claim is denied, it is a much safer and more pacific proceeding to have its validity ascertained by a court, than to undertake to assert it in any forcible way. Applying the principles of *Stevens* v. *Stevens, ubi supra,* the plaintiffs are entitled to a decree authorizing them to remove the wall so far as it stands upon their land, and also the timbers, so far as they project over it, but at their own expense, as the structure has become unlawful only since the license under which it was erected has been countermanded, and to an injunction forbidding the defendants from interfering with them in so doing, unless, within a brief time to be named in the decree, the defendants shall themselves remove the wall and timbers.

It is contended that the plaintiffs are bound by the acquiescence and laches of their predecessors in title, so that they cannot maintain this bill. Easements by prescription in land are only to be acquired by adverse user thereof for twenty years. Even if the user by the successive owners could be tacked one to the other, this time has not elapsed. *Leonard* v. *Leonard,* 7 Allen, 277. It does not even appear to have been known to any one of these owners before Lucinda C. Collamore, the plaintiffs' immediate grantor, that the whole wall was on the plaintiffs' land with the exception of two inches in thickness of the twelve-foot section, nor does it appear that she then knew of the defendants' claim to an oral license. This was in November, 1887, and in December, 1887, she conveyed to the plaintiffs,

as her trustees, who requested the defendants, in the February following, to remove their building from the wall, and who brought their bill in March. The defendants have not been prejudiced by any delay of the plaintiffs' predecessors in bringing the bill, and the plaintiffs themselves have acted with promptitude. The discovery (as it may perhaps be called) of the situation of the wall, was made as such discoveries have often been made, when the proposed erection of new buildings has rendered it necessary carefully to investigate the boundary lines of conterminous estates. Owners of property are not bound at their peril to prevent every illegal encroachment on their estate. Even if, by reason of mistake on their own part, buildings are erected on their premises by their own consent, they may be relieved from the incumbrances thus created where they have not continued for twenty years. *Proctor* v. *Putnam Machine Co.* 137 Mass. 159.

The principles upon which it has been held that a party plaintiff applying for equitable relief will be refused when he has unreasonably and without proper objection permitted another to erect any structure on his own land in violation of some contract, condition, or agreement which the plaintiff is entitled to enforce, have no application where the structure complained of is on the plaintiff's own land, and where the act of the defendant in erecting or maintaining it is an invasion of the owner's rights therein. *Whitney* v. *Union Railway*, 11 Gray, 359.

The defendant Farrington in his answer offers to pay the plaintiffs their damages caused by the retention of the wall on its present site, and requests that the bill may be dismissed with costs, unless the plaintiffs grant to him an easement in the wall or the fee to one half the soil upon which it stands, upon payment of an equitable sum as compensation therefor. We have no right to refuse the plaintiffs the relief to which they are entitled if they decline to sell their land or to grant an easement therein. The embarrassment in which the defendants find themselves simply results from their acts and those of their predecessors, in failing to observe the well known rules of law as to the creation of easements in the real estate of others, and in seeking to establish rights therein without any proper title.

*Decree for the plaintiffs.*