GREAT FALLS WATER WORKS COMPANY, Respond-
ENT, *v.* THE GREAT NORTHERN RAILWAY
COMPANY and others, Appellants.

[Submitted April 4, 1898.  Decided Oct. 17, 1898.]

*Easements—Right of Way—Substitution—Parol Grant—
License—Adverse Possession.*

1. EASEMENTS—*Right of Way—Substitution.*—A right of way for a water main was given by deed containing a description of the route to be taken; subsequently the grantee sought to obtain a change in the route so that it might correspond to that contained in the deed previously drawn. This request was refused and had been refused before the delivery of the deed referred to; the president of the corporation grantor afterwards orally authorized the grantee to lay its water main along the line described in the rejected deed; the testimony did not show that the easement granted was abandoned, or that the right of way sought should be given and accepted in lieu of the one granted: *Held,* that the evidence would not sustain a finding of an agreement for the substitution of one right of way for the other.

2. EASEMENT—*Parol Grant.*—An easement is an interest in land and cannot be created or granted except by deed or prescription.

8. LICENSE.—A license to lay a water main over or through land may be given by parol,—as no interest in the land is given; but the license may be revoked at any time, even after it has been executed and money expended in reliance thereon,—the licensee, however, has a reasonable time after notice of revocation, within which to remove his property.

4. LICENSE—*Adverse Possession.*—A license cannot ripen into an easement, as there cannot be an adverse possession by one in possession under a license.

5. LICENSE—*Creation—Agency—Estoppel.*—Plaintiff applied to the superintendent of defendant's grantor for permission to lay a water main over the premises subsequently conveyed; he referred plaintiff to his superior officers, by whom the right was refused; plaintiff, however, laid its main, and thereafter defendant purchased the property: *Held,* that no easement had been created, and defendant was not estopped to deny that no easement had been granted.

6. Under a deed of a ;right to lay a water main from a pumping station, and "after crossing [a certain railroad branch], along the southerly line of the right of way of the said branch to Tenth avenue," the main should intersect the branch at the nearest point thereon from the pumping station.

*Appeal from District Court, Cascade County; J. Leslie,
Judge.*

Injunction by the Great Falls Water Works Company against the Great Northern Railway Company and others. From a judgment for plaintiff, defendants appeal.  Reversed.

Statement of the case by the justice delivering the opinion.

Complaint for injunction to restrain defendants (appellants), which are railroad corporations operating railroads at Great Falls, from tearing up certain water mains laid by plaintiff (respondent) from its pumping station on the Missouri river to connect with its general water system at the city of Great Falls. Plaintiff owns a franchise to maintain and operate a water works system at Great Falls, with privilege of laying mains in the streets and alleys of said city, which system was in operation in January, 1896, when this action was commenced. On March 31, 1889, plaintiff purchased from the Great Falls Water Power & Townsite Company, hereafter called the "Townsite Company," certain realty then owned by the townsite company. Conveyance of this property was by deed in writing, and, in addition the grant of the parcel for a pumping station, the deed contains a grant as follows: "And the right of way necessary to lay water mains is hereby granted to said second party, its successors and assigns, but the same shall be laid, after crossing the Sand Coulee Branch of the Montana Central Railway Company, along the southerly line of the right of way of the said branch to Tenth avenue south, in the city of Great Falls, and from the point where the same intersects said Tenth avenue south the said mains shall be laid in the said streets and alley ways of said city." Plaintiff built its pumping station on part of the realty so purchased, and laid mains to connect therewith. After the delivery of the deed above referred to, plaintiff contends that the line of right of way "was changed and modified by mutual consent and agreement of the townsite company and the water company so that the same should be in a practically straight line from the said pumping station   *   *   * to the western terminus of Ninth avenue south, in said city, as then platted; that said line of right of way for the laying of water mains was then and there, by the consent and agreement of the said townsite company and said water company duly substituted for and in place of the said right of way for said mains as described in said deed, and it was understood and agreed that said right of way for mains so substituted

should be and become a right of way for any and all water mains which might become necessary to lay from said pumping station to said city in the proper carrying out of the terms and conditions of said ordinance, and furnish said city and its inhabitants with water; that in pursuance of said consent and agreement and change and modification of said right of way for water mains the said water company immediately entered upon said right of way so agreed upon, and did construct and lay a certain water main from said pumping station to the western terminus of Ninth avenue south in practically a straight line; that said main was laid with the full concurrence and consent of the said townsite company and said water company, and that the same has ever since been maintained by said water company and its successors in interest over said right of way without objection, let, or hindrance from any person or persons, corporation or corporations; that the plaintiff and its predecessors in interest have maintained and operated, held and owned, continuously, openly, notoriously, and under a claim of right, since August, 1889, to the present time, the said right of way as agreed upon in substitution for the right of way described in said deed.''

When the franchise was granted, and the aforesaid deed was delivered, and the alleged substitution of right of way was made, and until August, 1890, the townsite company owned all the ground involved herein; but on August 15, 1890, it conveyed to the St. Paul, Minneapolis & Manitoba Railway Company certain lots, numbered 1 and 8, excepting therefrom so much of the said premises as are described in the deed heretofore mentioned between the townsite company and the water company, dated March 31, 1889. This conveyance to the railroad company is alleged to have been with knowledge of the claim and rights of plaintiff and its predecessors. Defendants the Montana Central and Great Northern Railway Companies are operating railway lines over said lots 1 and 8. Plaintiff, finding its original main inadequate to supply the city and its inhabitants with water, proceeded, in 1895, at considerable expense, and with defendants' full

knowledge, to lay another main parallel to the original one, about 18 feet away, and was about to cross the said lots 1 and 8 with the new main, when interfered with by defendants. Plaintiff owns the only system of water supply for the city, and alleges that it will suffer irreparable damage unless allowed to carry out its obligations to supply the city and its inhabitants. Plaintiff also alleges that by reason of the modification of the right of way and its holding, occupancy, use, and possession since August, 1889, with defendants' full knowledge, it has become and is the absolute owner of said right of way, and by defendants' acts and failure to object to plaintiff's occupancy and use they are estopped from contesting plaintiff's right to occupy said ground as a right of way.

The defendants deny any modification, or change, or substitution in the original deed, or that any main was ever laid in pursuance of any change in the right of way described in the deed delivered to plaintiff; deny that the first main was laid under claim of right on the part of plaintiff, but admit that the main was laid with the concurrence and consent of the townsite company, and has been maintained since by the license of the townsite company and its successors down to within six months preceding the institution of this suit. Defendants plead the purchase of the property involved by the deed from the townsite company of August, 1890, with the exception therein heretofore described, and aver actual occupation and possession of the whole of the premises by railway lines long before March, 1890. The necessity to lay the new main along the line adopted is denied, it being pleaded that it can well be laid along the course described in the deed from the townsite company to the plaintiff. Defendants ask to have their title quieted, and that plaintiff be required to remove both its mains within a reasonable time.

The case was tried by the court. Findings and conclusions for plaintiff. New trial was denied. Defendants appeal. Further facts in the case appear in the opinion.

*A. J. Shores,* for Appellant.

There are two principal questions to be determined in this case.   First, does the evidence show a right in the water company to maintain its original main in its present condition ?   Second, has the water company established its right to an injunction against interference with the laying of the second main ?   These two questions are entirely distinct and do not necessarily require the same answer.   Of course if the right of the water company to continue its original main in its present condition cannot be sustained, it could hardly be pretended that it has any right to lay the new main, but on the other hand it does not follow that there is a right to lay the new main, even if the court should find that the original main cannot now be disturbed.   (Citing, *Larned* v. *Larned*, 11 Met. 421; *Pope* v. *Devereux*, 5 Gray, 409; Vol. 2 Wash. on Real Prop. 340; *Howlett* v. *Miller*, 63 Cal. 185; *Swayne* v. *Seamons*, 9 Wall. 254; *Chesapeake & O. Canal Co.* v. *Ray*, 101 U. S. 522; Tiedeman on Real Property, Sec. 597; Washburn's Easements and Servitudes, Sec. 6; *Totel* v. *Bonefoy*, (Ill.) 14 N. E. 686; *Crusdale* v. *Lannigan*, (N. Y.) 29 N. E. 824; *Cook* v. *Stearns*, 11 Mass. 533; *Stevens* v. *Stevens*, 52 Mass. 251; *Hodgkins* v. *Farrington*, 150 Mass. 19; *Thomke* v. *Fielder*, 64 N. W. 1030; *Wilson* v. *St. P., M. & M. Ry. Co.* 41 Minn. 56; *Johnson* v. *Skillman*, 25 Minn. 95; *Minn. Western Ry. Co.* v. *M. & St. L. Ry. Co.*, 59 N. W.; *Minn. Mill Co.* v. *Minn. & St. L. Ry. Co.*, 51 Minn. 304; *Flick* v. *Bell*, 42 Pac. 813; *Steward* v. *Stevens*, 15 Pac. 786; *Kipp* v. *Crenan*, 7 N. W. 418.)

*Clayberg, Corbett & Gunn,* for Respondent.

The following legal propositions seem to be conclusive in our favor:   First, the right of way granted by deed can be modified by a subsequent executed parol agreement.   (*LeFevre* v. *LeFevre*, 8 Am. Dec. 696; *Jackson* v. *Litch*, 62 Pac. St. 451; *Pope* v. *Devereaux*, 5 Gray 409; *Larned* v. *Larned*, 11 Met. 421; *Swain* v. *Seamens*, 9 Wall 254; *Chesapeake etc. Canal Co.* v. *Ray*, 101 U. S. 522; *Hewlett* v. *Miller*, 63 Cal. 185; *Rummil* v. *Robbins*, 77 Me. 193; Sec. 228 Civil Code;

*Kent Furniture etc. Co.* v. *Long*, 69 N. W. 657.)    Here the
modification was of the entire right of way.    The deed gave
a right of way to lay necessary mains, not just one main.
According to the testimony of all the witnesses, the change
was of the "right of way."    This would give the same rights
with the new route as were granted with the old.    If a con-
sideration were necessary, it plainly appears.    (a.)    The sur-
render of the old right of way.    (b.)    The additional benefit
to accrue to the townsite company, by having the main where
it could supply lots then on sale on both sides of the street.
Second, if it is considered as a parol agreement to grant a
right of way, it having been executed by the water company,
the result is the same.    (*Hazleton* v. *Putnam*, 54 Am. Dec.
158, and notes *Rindge* v. *Baker*, 57 N. Y. 209; *Wynn* v.
*Garland*, 68 Am. Dec. 190; *Russell* v. *Hubbard*, 59 Ill. 335;
*Dillon* v. *Crook*, 11 Bush. 321; *Gilmore* v. *Armstrong*, 66 N.
W. 998; *Simons* v. *Morehouse*, 88 Ind. 391; *Robinson* v.
*Thrailkill*, 110 Ind. 117; *Flickinger* v. *Shaw*, 87 Cal. 126.)
Third, if it is considered as a mere parol license to enter and
lay the pipe, it became irrevocable by the acts of the water
company. ( *Wilson* v. *Chalfant*, 15 Oh. 248; *Snowden* v.
*Wilas*, 19 Ind. 10; *Rerick* v. *Kern*, 14 Serg. & R. 267; *Rar-
itan W. P. Co.* v. *Veghte*, 21 N. J. Eq. 475; *Lee* v. *McLeod*,
12 Nev. 280; *McBroon* v. *Thompson*, 37 Pac. 57; *Joseph* v.
*Wild*, 45 N. E. 467; *De Graffenried* v. *Savage*, 47 Pac. 902.)
Fourth, defendants are in the same condition by virtue of an
estoppel.    (*Goodin* v. *Canal Co.*, 18 Oh. St. 169; *Mitchell* v.
*New Orleans*, 6 So. 522; *Railroad* v. *Prudden*, 20 N. J. Eq.
530; *Railroad Co.* v. *Delaware Co.*, 21 N. J. Eq. 283;
*Southern Marble Co.* v. *Darnell*, 21 S. E. 531; *Duke* v. *Grif-
fith*, 35 Pac. 512; *Curtis* v. *Water Co.*, 25 Pac. 378; *Na-
tional Water Works Co.* v. *Kansas City*, 65 Fed. 691; *Law-
rence* v. *Railway Co.*, 4 Am. St. 265; *McAulay* v. *Railroad
Co.*, 78 Am. Dec. 627; *Mosher* v. *Railroad Co.*, 60 Mo. 329;
*Marble* v. *Whitney*, 28 N. Y. 297.)    Fifth, the adverse and
continuous occupancy for more than five years gave us this
right of way beyond question.    (*Pavy* v. *Vance*, 46 N. E.
898.)

But should the court be inclined to the opinion that the agreement of July only applies to the old main, and that the right of way for the new main must be claimed under the deed, in such case it is apparent under the above authorities that at least up to Tenth avenue south as extended, the new main must be sustained. This on the ground of estoppel. Also on the construction of deed itself. It gives the right to lay the main anywhere on the tracts lots one (1) and eight (8), only requiring us to cross the railroad track south of Tenth avenue, and follow along the railroad right of way to said street. No definite point of crossing the railroad track being mentioned, we could select the line, and having done so without objection and laid our pipe, the description was thereby made definite. (*Bannon* v. *Angdeir*, 2 Allen 128; *Stone* v. *Clark*, 1 Met. 378; *Wynkoop* v. *Burger*, 12 Johns. 222; *Jennison* v. *Walker*, 11 Gray 423; *Onthank* v. *Railroad Co.*, 71 N. Y. 194.) Counsel seems to rely upon the proposition that the water company, being entitled to exercise the right of eminent domain, if it desired to lay the pipe line where it did, it should have condemned a right of way. All that would seem necessary in reply to this is that the right of way has been occupied peaceably by the water company, under a claim of right, and that if the water company has no right to lay its main at that place and has the right to exercise eminent domain, the fact that it has laid its main would place the burden upon the railroad company, if it objected to it, to institute suit for damages for the occupation. (*Lawrence* v. *Railroad Co.*, 4 Am. St. Rep. 265; *McAulay* v. *Western R. R. Co.*, 78 Am. Dec. 627; *R. R. Co.* v. *Prudden*, 20 N. J. Eq. 535; *Erie Ry. Co.* v. *Delaware Co.*, 21 N. J. Eq. 283; *Mitchell* v. *New Orleans, etc., Ry. Co.*, 6 So. 522.)

Hunt, J.—We gather from the evidence that Tenth avenue south, in the city of Great Falls, lies between Ninth avenue south and the water company's water station; that the Sand Coulee Branch of the Montana Central Railroad runs across the lots involved, and was in operation before the townsite

company conveyed an easement to the water company by the deed dated March 31, 1889; that instead of running its mains, after crossing the Sand Coulee Branch of the Montana Central, along the southerly line of the right of way of the said branch to Tenth avenue south, and from the point where the same intersects Tenth avenue south in the streets and alleys as required by the deed, plaintiff laid its pipe directly to Ninth avenue south.

It is now argued that the evidence shows that in July, 1889, the townsite company, acting through its president and secretary, orally agreed to a modification of the right of way described in the deed, and that pursuant to such agreement the main entered Ninth avenue south instead of Tenth. And upon this oral "modification" or "substituted" right of way plaintiff contends it may rely as fully as though a grant had been specifically described in the deed.

T. E. Collins, a member of the Great Falls Water Company in 1889, and the official of the company who managed its affairs until it began to sell water, negotiated for the site for the pumping station, which was practically given to the plaintiff by the townsite company. These negotiations commenced in 1889 with C. A. Broadwater, then president of the townsite company. Mr. Collins said that the route was planned, and a draft made of a line direct from the pumping station to Ninth avenue from the works. This was talked of before the execution of the deed above referred to and delivered, and negotiations were made on that basis. A deed was prepared early in the spring of 1889, conveying a right of way and pumping station to the water company, the line of right of way being direct from the pumping station to Ninth avenue from the works. This right of way crossed part of the southwest block of the town lying between Ninth and Tenth avenues south. This deed, however, was not signed, so another one was executed, describing the right of way heretofore referred to and granted, which is different from the proposed route included in the first deed, not executed. The water company objected to the route included in this latter deed on account of expense

to be incurred by following the line described, and because there was no one to be served on the Tenth avenue property, which was not then on the market.   Nevertheless, the deed was accepted by the company, and no change was made in the terms thereof.   Mr. Collins further testified that immediately thereafter negotiations were opened for a change of right of way; the result being that Broadwater, president of the townsite company, verbally authorized the water company to lay the main in a direct line from the pumping station to Ninth avenue south at its western terminus, so as not to pass the platted lots as shown by the first line.   The water company then constructed the line from the pumping station along the western terminus to Ninth avenue south, without objection by any one.   On cross-examination Mr. Collins testified that it was early in July, 1889, that he and Broadwater definitely determined that the main could be laid as it afterwards was laid.   Witness remembered an interview with Broadwater, in which he told him the water company would want another deed, and Broadwater said he had made two already, and that was enough, that he would not be bothered with any more; that witness then explained to Broadwater the benefit to both parties by the proposed change, whereupon Broadwater agreed that the line to Ninth avenue was satisfactory; that the first deed prepared showed practically the line adopted, but that the townsite company refused to execute it, after having agreed to give it.   A month afterwards, perhaps, witness continued, the deed actually delivered and accepted was prepared; that no agreement was ever entered into between the water company and the railroad companies with reference to a license of any kind, and that no objection was made by the railway people to the water company's crossing the tracks with its pipe lines; nor did the water company apply to the railway companies for permission to lay its main.

This testimony is the most material in the case, inasmuch as it is the basis of the plaintiff's claim of an absolute grant. We cannot agree, though, that it warrants the contention that there was a substitution of the right of way occupied for that

granted, or that it was ever understood that the easement conveyed was to be abandoned by the water company, and that the line which was occupied was the only one claimed. The refusal of Broadwater in the first instance to execute a deed direct to Ninth avenue shows the unwillingness of the townsite company at that time to do what respondent now argues it afterwards did by oral modification of the written deed. Subsequently the deed of grant to Tenth avenue south was executed, delivered and accepted. There was no possible mistake in its terms; on the contrary, there seems to have been unusual care exercised by both parties; and, although the water company did not get the right of way it first sought, it did get a deed of an easement and accepted the same. Previous negotiations culminated in the delivery and acceptance of this instrument. The various conversations had prior to its execution in relation to its contents ceased thereafter to be of material value. Then the water company took up the matter again, and, for reasons of convenience and economy, sought to obtain another right of way, by which its main would go down to Ninth avenue south; in other words, it tried to get what had theretofore been positively refused by the townsite company. Thereafter Broadwater, president of the townsite company, verbally "authorized" the water company to "lay the main in a direct line from the pumping station to Ninth avenue south at its western terminus, so as not to pass the platted lots as shown by the first line;" but he again refused to give a deed therefor. The water company afterwards laid its first main from the pumping station to Ninth avenue south, but as yet has never made use of the easement described in the deed.

Passing, as unnecessary for decision, the serious question of Broadwater's authority to represent the townsite company by oral agreement to a modification or change of a right of way from that described in the deed, and assuming he did have such power, we yet fail to find substantial evidence to support any greater claim on respondent's part than a right resting simply in a parol license to lay the main then desired to be laid in a direct line from the pumping station to Ninth avenue south.

Mr. Collins does not testify that he agreed with Broadwater that the water company would abandon the easement granted, or that the one sought should be given and accepted in lieu of the one granted; and it is our opinion, from the evidence, that the findings, predicated upon the argument of a substituted or exchanged right of way, are clearly against the evidence, and cannot stand. The water company therefore still owns its easement as described in the deed. This is an absolute right by grant. There is no evidence of its surrender or abandonment by the company, or of the performance of any act by the appellants, or their predecessors in interest, inconsistent with a recognition of the water company's rights under the deed.

The judgment of the district court in effect awarded the water company an easement. This would require that the water company have an interest in the land across which the pipes are laid. Such an interest, however, cannot be created or granted except by written deed or conveyance, or by prescription. A license, on the other hand, being, by the definition of Jones in his late book on easements, "a personal and revocable privilege to do some act or series of acts upon the land of another without possessing any estate therein," may be created by parol. The one gives immunity to the licensee while acting under the privilege, but yet confers no vested right by which he can rightfully enjoy it contrary to the will of the grantor; while an easement implies a permanent interest in the land. ( *Wiseman* v. *Lucksinger*, N. Y. 38 Am. Rep. 483.) The water company, under its license, was given the right to enter upon the line of right of way actually subsequently occupied, subject to the will of the townsite company; but to enforce an oral agreement pertaining to real estate the rule is there must be a complete and sufficient contract, founded not only on a valuable consideration, "but its terms defined by satisfactory proof, accompanied by acts of part performance unequivocally referable to the supposed agreement." ( *Cronkhite* v. *Cronkhite*, 94 N. Y. 323.) There is no such case before us.

Having now distinguished the attitude of the water company towards the townsite company when it entered upon the premises occupied as that of a mere parol licensee, is the position correct that, because the main was laid at great expense, without objection from the owner of the ground or the railroad companies, and maintained over six years before the suit was instituted, its right has become fixed by continuous adverse possession under a claim of right, and is the proposition tenable that the parol license to enter and lay the main has become irrevocable by the acts of the water company? The principle of the common law was that a parol license to be exercised upon the land of another creates an interest in the land, is within the statute of frauds, and is subject to revocation by the licensor at any time, even though the licensee has exercised acts under the license, or made expenditures in reliance thereon. (Freeman's note to *Lawrence* v. *Springer*, 31 Am. St. Rep. 715; 24 Atl. 933.) This rule obtains in many jurisdictions, while in others the doctrine of estoppel is invoked, whereby a licensor is not allowed to revoke the license where he has suffered the licensee to do acts thereunder, or to make expenditures thereon. That a license is revocable is sustained by the decided weight of authority. From the many cases examined we have selected a few where the rule is well stated, and where the conflicting authorities are reviewed:

In *Pitzman* v. *Boyce*, 111 Mo. 387, 19 S. W. 1104, the parties were adjoining landowners. The plaintiff laid a sewer pipe on defendants' land, without her consent, although she was informed of it, and of its purpose, five years after it was laid. In 1889 plaintiff expended several hundred dollars in perfecting his system of drainage. That same year, defendant being about to sever the pipe between her land and that of the plaintiff, the latter enjoined the former from disturbing the pipe. The court used the following language: ''The right in this case, then, must be regarded as merely permissive; in short, a license. Now, from its very nature, a license is revocable, but the authorities are divided as to whether a license is revocable after it has been executed, money

expended, etc. Touching this point, an eminent author observes: 'Some of the courts, indeed, deny the right of the [parol] licensor even to revoke the license, after outlay under it, resting the case on the ground of estoppel *in pais*, or treating the situation as equivalent to part performance of a parol agreement for the sale of an interest in real estate. But the better view, in presence of the statute of frauds, appears to be that, so far as the question of further enjoyment is concerned, the license may be revoked, though no action can be maintained against the licensee for what he has been induced or led to do.' (Bigelow on Estoppel (5th Ed.) 666, 667)." ·

In *Crosdale* v. *Lanigan*, 129 N. Y. 604, 29 N. E. 824, an action was brought to enjoin defendant from tearing down a stone wall erected on the defendant's land by the plaintiff under a parol license from the defendant, and in the erection of which the plaintiff had expended in labor and materials a sum exceeding $100. The theory upon which that case was tried was that the plaintiff was a licensee, and had a right to build the wall on the defendant's land, which, when executed, beame, in equity, irrevocable. The trial judge followed the rule that the license to enter upon defendant's land, when acted upon by the plaintiff, conferred upon him a right in equity in the nature of an easement to maintain the wall on defendant's lot. "If this claim is well founded," said the appellate court, "there has been created, without deed, and in violation of the statute of frauds, an interest in the plaintiff and his assigns in the land of the defendant, impairing the absolute title which he theretofore enjoyed, and subjecting his land to a servitude in favor of the adjacent property. It is quite immaterial in result that this interest claimed, if it exists, is equitable, and not legal. An incumbrance has been created upon the defendant's lot, and his ownership, to the extent of such interest, has been divested. We are of opinion that this judgment is opposed to the rule of law established in this state. There has been much contrariety of decision in the courts of different states and jurisdictions. But the courts of this state have upheld with great steadiness the

general rule that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is, nevertheless, revocable at the option of the licensor; and this, although the intention was to confer a continuing right, and money had been expended by the licensee upon the faith of the license. This is plainly the rule of the statute. It is also, we believe, the rule required by public policy. It prevents the burdening of lands with restrictions founded upon oral agreements, easily misunderstood. It gives security and certainty to titles, which are most important to be preserved against defects and and qualifications not founded upon solemn instruments. The jurisdictions of courts to enforce oral contracts for the sale of land is clearly defined and well understood, and is indisputable; but to change what commenced in a license into an irrevocable right, on the ground of equitable estoppel, is another and quite different matter. It is far better, we think, that the law requiring interests in land to be evidenced by deed should be observed than to leave it to the chancellor to construe an executed license as a grant depending upon what in his view, may be equity in the special case.''

In *Minneapolis Mill Co.* v. *Minneapolis & St. Louis Ry. Co.*, 51 Minn. 304, 53 N. W. 639, in an action brought by plaintiff to recover the possession of certain lands occupied by the tracks of the defendant, the court said: ''The most, we think, that can be possibly claimed from the evidence, is that tracks were built under a parol license from plaintiff; and there is nothing better settled than that a mere license, not subsidiary to a valid grant, may be revoked at pleasure, and does not create or transfer any interest in land, even though granted for a valuable consideration, and though the license may be for a purpose which involves the expenditure of money upon the faith of it. The mere fact that the mill company might have, without objection, permitted the railroad company to expend large sums of money in building tracks on the land on the faith of the license, would not operate as an estoppel. A licensee, is conclusively presumed, as a matter of

law, to know that a license is revocable at the pleasure of the licensor; and, if he expends money in connection with his entry upon the land of the latter, he does so at his peril. Any other doctrine would render most licenses irrevocable, and make them operate as conveyances of an interest in land.''

The doctrine of this case is approved of in the still later case of *Minneapolis Western Ry. Co.* v. *Minnesota & St. Louis Ry. Co. et al.*, reported in 58 Minn. 129, 59 N. W. 983. In that case the court said that ''the law is jealous of a claim to an easement, and the party asserting such a claim must prove his right to it clearly. It cannot be established by intendment or presumption.'' To the same effect are the following authorities: *Hodgkins* v. *Farrington*, 150 Mass. 19, 22 N. E. 73; *Lawrence* v. *Springer, supra; Hathaway* v. *Yakima Water, etc. Co.*, 14 Wash. 469, 44 Pac. 896. Many decisions upon the conflicting sides are collated by Browne in his note to *Wood* v. *Leadbitter*, 13 M. & W. 838, 16 Eng. Ruling Cas. 49.

The supreme court of the territory of Montana, in *Fabian* v. *Collins*, 3 Mont. 215, after affirming the general doctrine that a license is limited to the original parties, and cannot be sold or transferred, recognized the right of the licensors to revoke a license to use certain waters for mining purposes; citing Washburn on Real Property and Washburn on Easements and *Babcock* v. *Utter*, 32 How. Pr. 439. *Babcock* v. *Utter* decided that a license, even after the construction of a dam by the licensee, was revocable, and the leading English case of *Wood* v. *Leadbitter, supra*, decided in 1845, was affirmed. Selden, J., made it clear in his opinion in the New York case that, if the position that a license such as the plaintiff at bar was given is irrevocable, the parol license by reason of expenditures made in pursuance of it lost its character as a mere personal privilege, and became a grant in fee of the right claimed by the water company.

The principle, which cannot be disregarded, is that, where there is a mere parol license,—for example to lay a water main across the licensor's lots,—a perpetual right cannot be

maintained, inasmuch as it cannot be granted by parol without doing violence to the statute of frauds (Section 217 of the Compiled Statutes, 1887; Section 2185 of the Civil Code), which invalidates the conveyance of any interest in lands, other than agreements for leasing for a short period, without writing. Now, the sequence of the rule that an easement can only be created by deed is that a license which merely renders lawful an entry which otherwise would be unlawful cannot, except by prescription,—which is equivalent to a deed,—become an absolute right in property without practically doing away with the statute of frauds, and completely overturning the common-law rule, as pointed out by Baron Alderson in *Wood* v. *Leadbitter, supra*; Browne, Statute of Frauds, Section 29.

An extended examination of cases bearing upon the doctrine of the revocability of parol licenses has impressed upon us the belief that the sound, the logical, as well as the safe, reasoning sustains the rule that a parol license of the character of the one under consideration is always revocable at the pleasure of the licensor, so far as any further enjoyment of the privilege extended goes. Freeman's note to *Lawrence* v. *Springer, supra.* Modern text writers, deducing principles from the more recent opinions of the courts, have taken this view of the subject; and to give that security to titles so essentially important in affording protection against flaws, and burdens not imposed by writing, but resting upon verbal permissions or agreements, it is well settled that the doctrine of estopppel is inapplicable, "inasmuch as the licensee is bound to know that his license was revocable, and that in incurring expense he acted at his own risk and peril." Browne on St. Frauds (5th Ed.) Section 31; Jones on Easements, Section 69.

Care should be taken always to distinguish between the facts of a case like that before us and one where parties have made a verbal agreement, even if in the form of a license, by which an interest in the land is contracted for, and where, under such verbal agreement, and relying upon it, possession in good faith is taken, and valuable improvements are made, or where such conditions exist that equity will hold the grantee

entitled to an affirmance of his rights.   We there encounter the equitable doctrine of part performance, where a verbal contract for the sale of an interest in land may be specifically enforced.   Nor must a parol license be confounded with an easement which, by grant or reservation, is appurtenant to land, and which passes by deed from the owner to his grantee without particular mention,—as does an interest in a ditch and water right by a deed of a ranch, if existing in favor of the place at the time of the conveyance thereof, and necessary to its cultivation and enjoyment.   (*Tucker* v. *Jones*, 8 Mont. 225, 19 Pac. 571; *Sweetland* v. *Olsen*, 11 Mont. 27, 27 Pac. 339; *Sloan* v. *Glancy*, 19 Mont. 70, 47 Pac. 334.)   But in the cases instanced different principles control, and the authorities cited to the question under discussion become inapplicable.

Nor, under the circumstances, could the use of the ground in which the pipe line is laid ripen into an easement by prescription.   There can be no adverse use and possession where one holds under license from another.   There is an inconsistency between the two claims.   When one enters and holds in pursuance of a license, the holding is not adverse, and no presumption of a grant from adverse possession can arise out of it.   In *Pitzman* v. *Boyce, supra*, plaintiff claimed a prescriptive right, but it was held that, the use having been permissive in its inception, such permissive character, being stamped on the use at the outset, will continue of the same nature; and that no adverse user can arise until a distinct, positive assertion of right, hostile to the owner, and brought home to him, or change a subordinate and friendly holding into a contrary one, exclusive and independent in its character.   The water company in the case at bar has never repudiated the license, and claimed adversely to the owner of the ground, with knowledge of such claim and acquiescence in it by the owner of the land.   Respondent, therefore, has acquired no easement by prescription.   Jones on Easements, Section 179.

So, without recapitulating the testimony at length, we conclude that the findings that the original main has been maintained and held by the water company, since the laying

thereof, by an exclusive, adverse, open, or notorious holding under claim of right, are against the evidence and must be disregarded.

The water company has simply lost its right to continue its main where it was placed. In such a case the licensee should be allowed to remove its property within a reasonable time after notice of the revocation by the licensor, or of acts deemed to be a revocation by the licensor. This removal should be at the expense of the licensee, and without unnecessary harm to the rights of the appellants. If plaintiff does not remove its main, or proceed in eminent domain, within a reasonable time, defendants should have the right to remove it. This we believe to be just, and within the power of the court. (*Hodgkins* v. *Farrington*, 150 Mass. 19, 22 N. E. 73.)

This disposes of the plaintiff's claims in regard to the old main, or the one laid in 1889, and leaves plaintiff in the position of a licensee who has made expenditures under his license, and whose license has been revoked by the licensor. The new main, or that laid in 1895, must also be removed by the water company within a reasonable time, unless condemnation proceedings are instituted. Plaintiff especially urges in support of its right to lay this main that the railroad companies, as successors in interest of the townsite company, are estopped from claiming that the plaintiff could not complete the new line, because they purchased with full knowledge of plaintiff's rights claimed, and encouraged the laying of the main. Under no circumstances can the plea of estoppel prevail. Plaintiff cannot claim an easement under the law just heretofore announced, while no rights can be granted it under a license, because the evidence expressly discloses that one McLaren, who at the time was the general superintendent of the Montana Central Railroad, one of the appellants, informed the representatives of the water company by letter dated October 30, 1895, and before the pipe was laid, that before the main could be laid on the grounds of the railroad company it would be necessary to make formal application, and to obtain permission to do so from higher authorities. An application was there-

after made in writing to lay the pipe on the right of way of the Great Northern Railway Company from the water works to Ninth avenue south, a distance of 2,240 feet, and from Ninth avenue south to Eighth avenue south, a distance of 450 feet. This was denied by the general manager, one C. H. Warren, the superior officer to the general superintendent, who suggested another route across the railroad company's grounds, and parallel with the boundary thereof until they reach Tenth avenue; but this suggestion was not followed out. There is no evidence to prove a license to lay the second main. The testimony of McLaren that he had no actual authority to give permission to do the acts desired, together with the fact that he notified the water company of this lack of authority, is convincing, and leaves plaintiff with nothing to support its contention in this respect.

It is next said that Broadwater, when he gave the license of 1889, granted permission to lay mains. The evidence, however, shows that only one main was talked of when Broadwater gave the license, and we can render the privilege efficacious only as to the one then under consideration.

Finally, the water company, falling back upon the deed of easement, says it was empowered by the terms of such deed to lay the new main to Tenth avenue south as extended. The orientation of the ground and pipe line routes is very difficult without a plat, but, as none has been furnished us, we must work it out as best we can from the evidence. The water company contends that the right granted is to lay the main anywhere across lots 1 and 8, provided the main crosses the track south of Tenth avenue, and follows along the railroad right of way to Tenth avenue. The deed does not specify in precise terms that mains must be laid from the pumping station in a direct line across the railroad track, but does recite that "the same shall be laid, after crossing the Sand Couleee Branch of the Montana Central, * * * along the southerly line of the right of way of the said branch to Tenth avenue south, * * * and, from the point where the same intersects said Tenth avenue south, the said mains shall be laid

in the streets and alleyways of said city.'' Now, it seems to us it was plainly contemplated that the main should cross the railroad before it reached Tenth avenue; otherwise, for what purpose was it specified that after such crossing it should run along the southerly line of the right of way to Tenth avenue? It is but a reasonable inference that the water company wanted to secure the most direct route to the point where it could serve the city with its main. Hence it would seem to follow that it would go as directly as it could from its pumping station to the point of crossing the railroad tracks, always keeping in view the requirement that by any route chosen it must run along the right of way of the railroad to Tenth avenue south. This being so, it is obligatory upon it to go to the nearest point along the southerly line of the right of way, and from such point it must continue along the line of right of way to Tenth avenue.

We have studiously examined all the points pressed by plaintiff, and our judgment is that the decree of the lower court stands without substantial evidence or approved authority to support it.

The judgment is reversed, and the cause is remanded for a new trial, with directions to the district court to proceed as indicated in this opinion, and also to ascertain and fix a reasonable time in which the water company must remove its mains, or proceed in eminent domain, as herein indicated.

*Reversed and remanded.*

PIGOTT, J., concurs. PEMBERTON, C. J., not sitting.