Ferguson v. Spencer.

No. 14,491.

FERGUSON v. SPENCER.

EASEMENT.—License.—Revocation.—The lands of plaintiff and defendant, ·
adjoining owners, were so situated that surface and spring water col-
lected on defendant's land was discharged upon the plaintiff's land.
Pursuant to an oral agreement they constructed a drain, each construct-
ing the distance required on his own land. The drain thus constructed
was beneficial to the plaintiff's farm.

Held, that the effect of the agreement, when acted upon by the parties,
was to create mutual licenses in favor of each in the land of the other,
and that the plaintiff having expended money, in reliance upon the
agreement, the defendant was liable in damages for digging up the
drain on his land and terminating the arrangement.

From the Warren Circuit Court.   ·

J. McCabe and E. F. McCabe, for appellant.

J. W. Sutton and W. L. Rabourn, for appellee.

MITCHELL, J.—The nature of the action, as disclosed by
the pleadings, is not very well defined.   It may be regarded
as a suit to recover damages caused by interrupting the flow
of an artificial stream through, or diverting it from, a tile
drain through which water was supplied to the plaintiff's
animals on her farm.

The merits of the case may be determined upon the fol-
lowing facts returned to the court in a special verdict.   In
1884 the plaintiff, Mrs. Spencer, and the appellant, William
Ferguson, were adjoining land-owners in Warren county,
their farms being separated by a public highway running
east and west on the division line.   Their farms occupied
such a relation that surface and spring water collected on
and issuing from the defendant's land was discharged over
and through a depression, with more or less defined banks,
through a similar depression over and upon the plaintiff's
land.   In the year above mentioned the parties mutually
agreed to construct a covered tile drain, of specified dimen-
sions, to be laid at a given depth, each to construct the dis-

tance required, on his or her own land. In pursuance of this agreement the plaintiff, commencing at the highway separating her farm from that of the defendant, constructed a drain of the dimensions agreed upon of the length of forty rods, at a cost of over sixty dollars. The defendant at the same time constructed a similar drain on his land, connecting it with that built by the plaintiff at one end, and with an existing tile drain on his land at the other, thereby making a continuous drain over the lands of both, through which water flowed constantly. The drain thus constructed was beneficial to the plaintiff's farm, enhancing its value by affording her more perfect drainage than before, and by furnishing a constant supply of living water for stock on her farm, she having utilized the water by constructing a convenient watering place. In 1887 the defendant refused to continue the arrangement, and dug up some of the tiling on his own land, so as to disrupt the drain and diminish the supply of water, to the damage of the plaintiff.

The question is whether or not, after money had been expended in constructing the drain in reliance upon the agreement, either of the parties, without the consent of the other, could terminate the arrangement without becoming liable for any damage which might result?

The effect of the agreement, when acted upon by the parties, was to create mutual or cross-licenses in favor of each in the land of the other. Each was given a license from the other to make use of the other's land for the purpose of conducting water over it for a purpose supposed beneficial to his own land.

A license is defined to be an authority given to do some act, or a series of acts, on the land of another without possessing an estate therein. *Cook* v. *Stearns,* 11 Mass. 533 (13 Am. & Eng. Encyc. of Law, 539).

By means of the arrangement entered into the plaintiff obtained a license to connect the covered tile drain which she constructed with a similar drain constructed by the de-

fendant, thereby affording her the means of draining or con-
ducting water from springs and other sources on the defend-
ant's land for the benefit of her farm. This is found to have
been a valuable privilege, to obtain which the plaintiff ex-
pended money in reliance upon a mutual agreement entered
into with the defendant. It is everywhere settled that a
parol license to use the land of another is revocable at the
pleasure of the licensor, unless the license has been given
upon a valuable consideration, or money has been expended
on the faith that it was to be perpetual or continuous. Where
a license has been executed by an expenditure of money, or
has been given upon a consideration paid, it is either irre-
vocable altogether, or can not be revoked without remuner-
ation, the reason being that to permit a revocation without
placing the other party *in statu quo,* would be fraudulent
and unconscionable  *Nowlin* v. *Whipple,* 120 Ind. 596;
*Robinson* v. *Thrailkill,* 110 Ind. 117; *Snowden* v. *Wilas,* 19
Ind. 10; *Clark* v. *Glidden,* 60 Vt. 702.

Where a license is coupled with an interest, or the licensee
has done acts in pursuance of the license which create an
equity in his favor, it can not be revoked. *East Jersey Iron
Co.* v. *Wright,* 32 N. J. Eq. 248.

The present case is closely analogous to *Clark* v. *Glidden,*
*supra,* where it was held that an executed license to lay pipes
to conduct water from one farm to another, for the benefit of
the owner of the latter, was irrevocable, and the licensor was
enjoined, upon terms, from interfering with the water-pipes
laid in pursuance of the license. The present case is not
distinguishable in principle. It may be conceded that the
adjudications upon the subject of the right to revoke parol
licenses are not uniform, and that they can not be success-
fully classified, or arranged, into harmonious groups; but it
is the settled law of this State, as it is of many others, that
where a license, involving the expenditure of money, has
been so far executed that its withdrawal would operate as a
fraud upon the person who expended money in reliance upon

it, no revocation can take place without making compensation to the person injured by the withdrawal. *Simons* v. *Morehouse*, 88 Ind. 391, and cases cited; *Rogers* v. *Cox*, 96 Ind. 157. Thus in *Rerick* v. *Kern*, 14 Serg. & Rawle, 267 (16 Am. Dec. 497, and note), a leading case on the subject, it is held that an executed license, the execution of which involved the expenditure of money or labor, is regarded in equity as an executed agreement for a valuable consideration, and that it is, therefore, irrevocable, although given merely by parol and relating to the use and occupation of real estate. This doctrine is so thoroughly settled by the decisions of this court that we do not deem it profitable to elaborate the subject further. See 5 Lawson Rights and Remedies, section 2675; *Woodbury* v. *Parshley*, 7 N. H. 237. The rule is, of course, different where nothing but a mere naked license is involved. *Parish* v. *Kaspare*, 109 Ind. 586.

It may be conceded that a different rule prevails in the State of New York, as well as in some other States. *Cronkhite* v. *Cronkhite*, 94 N. Y. 323; *Johnson* v. *Skillman*, 29 Minn. 95 (43 Am. Rep. 192).

Some other questions of minor importance, which do not affect the merits of the case, are suggested. It is sufficient to say we have examined these questions, and find no error which would justify a reversal of the judgment.

Judgment affirmed, with costs.

Filed Nov. 25, 1890; petition for a rehearing overruled Jan. 30, 1891.