# [ARCHER ET AL., APPELLANTS, *v.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO., RESPONDENT.

(No. 2,802.)

(Submitted March 18, 1910. Decided April 2, 1910.)

[108 Pac. 571.]

*Real Property—Easements—Parol Licenses—Revocation—Acts Constituting—Appeal.*

Real Property—Easements—Parol Licenses—Revocability.

1. A parol license (not coupled with an interest and for which not any consideration had been paid), to erect a dam on, and construct an irrigation ditch over, the licensor's land, is revocable at the latter's will at any time, even though acted upon and the licensees expended money in reliance thereon.

Same—Revocation—Acts Constituting.

2. An appropriation of premises to a use inconsistent with the enjoyment of a parol license constitutes a revocation of it.

Same—Revocation—Notice.

3. Notice of the revocation of a parol license is only necessary where the licensors have removable property upon the premises.

Same—Revocation—Acts Constituting.

4. A parol license to erect a dam and construct an irrigation ditch on and over the licensor's lands was revoked by his action in granting a right of way to a railroad company for a grade embankment, the natural consequence of the maintenance of which was to injure the dam and ditch at high-water season; hence any damage in this respect constituted *damnum absque injuria.*

Evidence—Admissibility—Pleading—Review.

5. Where evidence was admitted without objection, the question whether its introduction was warranted by the pleadings will not be considered on appeal.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ACTION by T. F. Archer and others against the Chicago, Milwaukee & St. Paul Railway Company of Montana. From an order granting defendant a new trial, plaintiffs appeal. Affirmed.

In behalf of Appellants, *Mr. Wm. Wallace, Jr.,* and *Mr. W. M. Johnston* submitted a brief. *Mr. Wallace* argued the cause orally.

When plaintiffs built their dam and their ditch on Bachman's land, they were state agents in charge of a public use, and had the right to acquire a fee for their dam site, and an irrevocable easement for their ditch right of way, by condemnation, had Bachman been unwilling to bestow it upon them. (*Ellinghouse* v. *Taylor,* 19 Mont. 462, 48 Pac. 757; *Smith* v. *Deniff,* 24 Mont. 22, 81 Am. St. Rep. 408, 60 Pac. 398, 50 L. R. A. 741.)   Under the circumstances of this case, Bachman, the owner of the land, lost his right to maintain either trespass or ejectment against plaintiffs.   There remained in him merely a right to claim damages, for the taking of the right of way and damsite; this right was personal to Bachman, would not have passed to his grantee had he deeded away the entire property, and was subject to be barred by the limitation applicable to such an action. (*Roberts* v. *Northern Pacific,* 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873; *Penn Mut. Ins. Co.* v. *Austin,* 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626; *Northern Pacific* v. *Smith,* 171 U. S. 275, 18 Sup. Ct. 794, 43 L. Ed. 157; *New York City* v. *Pine,* 185 U. S. 105, 22 Sup. Ct. 592, 46 L. Ed. 820; *United States* v. *Lynah,* 188 U. S. 467, 23 Sup. Ct. 349, 47 L. Ed. 547; *Maffet* v. *Quine,* 93 Fed. 349; *King* v. *Railway,* 119 Fed. 1017; *Miocene Ditch Co.* v. *Jacobson,* 146 Fed. 686, 77 C. C. A. 106; *Warren etc. R. Co.* v. *Garrison,* 74 Ark. 136, 85 S. W. 82; *Atlanta etc. Ry.* v. *Barker,* 105 Ga. 534, 31 S. E. 455; *Green* v. *Railway,* 112 Ga. 849, 38 S. E. 81; *Railway* v. *Englehart,* 57 Neb. 444, 77 N. W. 1094; *Kakeldy* v. *Railway,* 37 Wash. 675, 80 Pac. 207.)

In many of the states, even though the parties occupying the land are engaged in a purely private enterprise for which no interest in the land could be gained against the owner's will, it is held that if the owner suffers, or especially if he permits them to enter, and to expend large sums of money making valuable improvements, well knowing their purpose, he estops himself from exercising the right of revocation, on the ground that to exercise it would be a fraud on the licensees. (25 Cyc. 646; *Wynn* v. *Garland,* 19 Ark. 23, 68 Am. Dec. 190;

*Hazleton* v. *Putman,* 3. Pinn. 107, 3 Chand. 117, 54 Am. Dec.
158, and cases cited; *De Graffenreid* v. *Savage,* 9 Colo. App.
131, 47 Pac. 902; *Hiers* v. *Mill Haven Co.,* 113 Ga. 1002, 39
S. E. 444; *Saucer* v. *Keller,* 129 Ind. 475, 28 N. E. 1117; *Wick-
ersham* v. *Orr,* 9 Iowa, 253, 74 Am. Dec. 348; *Kastner* v. *Benz,* 67
Kan. 486, 73 Pac. 67; *Lee* v. *McLeod,* 12 Nev. 280; *State* v.
*Mayor,* 49 N. J. L. 303, 60 Am. St. Rep. 619, 8 Atl. 123; *Garrett*
v. *Bishop,* 27 Or. 349, 41 Pac. 10; *Dark* v. *Johnston,* 55 Pa. 164,
93 Am. Dec. 732; *Risien* v. *Brown,* 73 Tex. 135, 10 S. W. 661;
*Western Union Tel. Co.* v. *Bullard,* 67 Vt. 272, 31 Atl. 286; *Met-
calf* v. *Hart,* 3 Wyo. 513, 31 Am. St. Rep. 122, 27 Pac. 900, 31
Pac. 407; *National Waterworks Co.* v. *Kansas City,* 65 Fed.
691; *Grimshaw* v. *Belcher,* 88 Cal. 217, 22 Am. St. Rep. 298,
26 Pac. 84; *Brantley* v. *Perry,* 120 Ga. 760, 48 S. E. 332;
*Sumpter Ry. Co.* v. *Gardner,* 49 Or. 412, 90 Pac. 499;
*Dawson* v. *Railroad Co.,* 107 Md. 70, 126 Am. St. Rep. 337,
68 Atl. 301, 15 Ann. Cas. 578, 14 L. R. A., n. s., 809.) Much
more ought estoppel to arise in favor of this public use which
plaintiffs in this case were actually in charge of.

What is the nature of the irrevocable right against Bach-
man thus created, and who had control of a damage claim
arising from injury thereto? Conceding the plaintiffs had a
ditch right of way across the land of Bachman, it could only
be terminated by act of the plaintiffs themselves. Of course,
Bachman, in 1899 when he gave plaintiffs permission to take
materials as needed for construction of the ditch and dam,
might have legally imposed as a condition thereof that he should
be privileged to terminate their occupancy at any time on
notice, or even that he should be permitted to adjust, or even
forgive, if he so desired, any claim for damage that might arise
in their favor through the construction of any railway.
(*Stephens* v. *Southern Pac. Ry.,* 109 Cal. 86, 50 Am. St. Rep.
17, 41 Pac. 783, 29 L. R. A. 751; *Hartford Ins. Co.* v. *Chicago
etc. Ry. Co.,* 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84.)
But he neither did in fact, nor did he attempt to, impose any

such conditions, and the right to claim damage for an inter-ference with the ditch and dam never vested in Bachman, nor did the plaintiffs ever bestow it upon him. Section 4517 of the Revised Codes provides: "A servitude is extinguished, * * * 3. By the performance of any act upon either tene-ment by the owner of the servitude or with his assent which is incompatible with its nature or exercise." If a license made irrevocable by estoppel is analogous to a "servitude," it can only be extinguished by the act of the plaintiffs themselves. It goes without saying that Bachman could not grant to de-fendant any greater right than he himself possessed; and, if he could not himself have removed plaintiffs or recovered against them the ground occupied by their ditch and dam, he could not authorize defendant to do so.

It is insisted that the deed of the mere right of way was in legal effect a revocation by Bachman of plaintiff's rights to occupy and use the dam and ditch. Before this can be true, Bachman's purpose to revoke must be spelled from the deed. He did not expressly declare such purpose in the deed. As in the case of an easement, it can only be terminated by act of the easement holder necessarily incompatible with a purpose to further enjoy (Revised Codes, sec. 4517); so, in the case of a revocable license it can only be terminated by act of the person having a right to revoke necessarily incompatible with the enjoyment of the license. No power of revocation was con-ferred on the railway by Bachman, and if the declarations in the deed were not necessarily incompatible with the enjoyment of plaintiffs' privilege, then Bachman has never revoked or attempted to revoke plaintiffs' rights. While it is true that the law gave defendant the right to change either the high-water channel or the main channel of the river, they could only exer-cise this right on compensation to everyone suffering damage thereby, and the possession and occupancy of plaintiffs would be equally entitled to compensation for damage, if any sus-tained, as the occupancy and title of Bachman. The latter

Bachman forgave, the former he could not forgive. Even though the occupancy were under a revocable license solely, he could only terminate that occupancy; until he did so terminate it, the occupants would be entitled to claim damage, if any, resulting from the cutting off of the high-water channel.

In behalf of Respondent, there was a brief by *Messrs. Gunn & Rasch,* and oral argument by *Mr. M. S. Gunn.*

The doctrine that the appellants' license became irrevocable, and that the respondent and its grantor are estopped to claim otherwise, is repudiated and rejected by the weight of authority. In this state, the question is no longer open to discussion; and that a license is revocable, notwithstanding cost and expense may have been incurred, and expenditures made, upon the faith of such license, is settled law. (See *Great Falls Water Co.* v. *Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 963; 3 Farnham on Water Rights, secs.784-835; *Hicks Brothers* v. *Swift Creek Mill Co.,* 133 Ala. 411, 91 Am. St. Rep. 38, 31 South. 947, 57 L. R. A. 720; *Yaeger* v. *Tuning,* 79 Ohio St. 121, 128 Am. St. Rep. 679, 86 N. E. 657, 19 L. R. A., n. s., 700; *Rodefer* v. *Pittsburgh O. V. & C. R. Co.,* 72 Ohio St. 272, 74 N. E. 183, 70 L. R. A. 844; *Wilson* v. *St. Paul M. & M. R. Co.,* 41 Minn. 56, 42 N. W. 600, 4 L. R. A. 378; *Jones* v. *Stover,* 131 Iowa, 119, 108 N. W. 112, 6 L. R. A., n. s., 154; *Shipley* v. *Fink,* 102 Md.. 219, 62 Atl. 360, 2 L. R. A., n. s., 1002; *Village of Dwight* v. *Hayes,* 150 Ill. 273, 41 Am. St. Rep. 367, 37 N. E. 218; *Ewing* v. *Rhea,* 37 Or. 583, 82 Am. St. Rep. 783, 62 Pac. 790, 52 L. R. A. 140; *Yaeger* v. *Woodruff,* 17 Utah, 361, 53 Pac. 1045; *Johnson* v. *Skillman,* 29 Minn. 95, 43 Am. Rep. 192, 12 N. W. 149; *Pifer* v. *Brown,* 43 W. Va. 412, 27 S. E. 399, 49 L. R. A. 497; *Clapp* v. *City of Boston,* 133 Mass. 367.)

But it is insisted that the principle of these cases is not applicable here, because the appellants, and their predecessors in interest, could have acquired the right for the construction and maintenance of their dam and ditch upon the lands of

Bachman by proceedings in eminent domain. But upon this question the appellants are likewise concluded by the decisions of this court. (*Great Falls Water Co.* v. *Great Northern Ry. Co.*, *supra; Prentice* v. *McKay*, 38 Mont. 114, 98 Pac. 1081; see, also, *Baltimore & H. R. Co.* v. *Algire*, 63 Md. 319; *Wood* v. *Michigan Air-Line Ry. Co.*, 90 Mich. 334, 51 N. W. 263; *Minneapolis etc. Ry. Co.* v. *Marble*, 112 Mich. 4, 70 N. W. 319; *Johanson* v. *Atlantic City Ry. Co.*, 73 N. J. L. 767, 64 Atl. 1061, *Slaght* v. *Northern Pac. Ry. Co.*, 39 Wash. 576, 81 Pac. 1063; *Weidensteiner* v. *Mally* (Wash.), 104 Pac. 143; *Richmond & D. R. Co.* v. *Durham & N. R. Co.*, 104 N. C. 658, 10 S. E. 659; *St. L. N. Stockyards* v. *Wiggins Ferry Co.*, 112 Ill. 384, 54 Am. Rep. 243; *Murdack* v. *Prospect Park R. Co.*, 73 N. Y. 579; *Minneapolis, St. P. & Ste. M. Ry. Co.* v. *Marble*, 112 Mich. 4, 70 N. W. 319; *Baltimore & H. R. Co.* v. *Algire*, 63 Md. 319.)

It is contended that there was no revocation of the license to maintain the dam and ditch upon Bachman's land, and that before it can be said that the rights of the appellants under the license have been abrogated, "Bachman's purpose to revoke must be spelled from the deed." The deed conferred upon the respondent, in terms as positive and clear as language can make it, the right and authority to construct its road in such manner as it should choose, subject only to the provisions for openings and passageways specifically enumerated in the deed. The manner in which the land was made use of for railroad purposes, being inconsistent with the use made of the premises by the appellants under their license, not only spelled a revocation of their license, but, as said by this court in *Prentice* v. *McKay, supra*, it "amounted to a revocation." (*Clapp* v. *City of Boston*, 133 Mass. 367; *Forbes* v. *Balenseifer*, 74 Ill. 185; *Wilson* v. *St. Paul M. & M. R. Co., supra; Simpson* v. *Wright*, 21 Ill. App. 67; *Weidensteiner* v. *Mally, supra.*)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The map herewith presented will serve to illustrate the facts appearing on this appeal.

In 1899 Kreichbaum, Cartwright, Gile, and Bethke constructed the dam across the Musselshell river at the point shown on the map, and likewise constructed a ditch tapping the east bank of the river immediately above the dam, for the purpose of conveying water for irrigating their lands lying farther down the river. Kreichbaum succeeded to the interest of Gile, Davis to the interest of Bethke, and Davis, Archer, and Cooley, each also acquired certain interests from Kreichbaum. From 1899 to the present time the dam and ditch have been used continuously by the plaintiffs during every irrigation season, except as hereinafter mentioned. For convenience the dam and ditch are marked on the map ''Archer Dam and Ditch.'' The dam, the head of the ditch, the point where the line of railway crosses the original channel, at the initial letter ''M,'' and all the territory at and to the left of these points and below the

north line of the right of way, is on the southeast quarter of section 27, township 9 north, range 28 east, part in Fergus county and part in Yellowstone county. At the time the dam and ditch were constructed, that land was, and continuously since has been, owned and possessed by George Bachman, except such of it as was conveyed to the defendant railway company. In 1906, when the Chicago, Milwaukee and St. Paul Railway Company came to construct its line of road through this state, it purchased by deed from Bachman a strip of land for right of way purposes, 100 feet in width, and, at the point illustrated by the map, an additional strip 200 feet wide, for the purpose of changing the channel of the Musselshell river. The deed from Bachman and wife to the railway company, in addition to conveying these strips of land, particularly authorizes the company to change the channel of the river at this point, and releases it from any and all claims for damages on account of such change.  The deed requires the company to make some practical arrangement for taking water for irrigation purposes across the right of way, requires the company to make one grade crossing, and, if it could be done in a practical manner, to make an underground passageway for stock at a slough.  The location of this slough is not fixed either in the deed or by the evidence.  Upon one of the maps used upon the trial the location of a slough is indicated some distance west of the points mentioned above, and doubtless this is the slough to which reference is made in the deed.  After making certain provisions for the use of snow fences by the railway company, the deed continues: ''And said parties of the first part [Bachman and wife], for themselves and for their heirs and assigns, covenant and agree that said grant is upon no other consideration than that named herein; that neither said party of the second part [railway company] nor its agents have made any agreement, promise, or condition, verbal or written, for or relating to any crossing, passageway, or other privilege over, across or under said railway; and that the right thereto shall be only that conferred by statute, or by an instrument in writing under the

corporate seal of the party of the second part. And said party of the first part hereby releases all damages and claims thereto to all its other lands by reason of the location, construction and operation of a railway over and upon said premises, hereby conveyed.'' Having secured this conveyance, the railway company excavated a new channel for the Musselshell river, as indicated on the map, and then constructed a solid grade embankment, about seven feet high, across the old channel at the point ''M,'' and across the low land immediately adjacent thereto. The company also constructed an irrigation ditch, marked on the map ''Railroad Ditch,'' tapping the west bank of the river some distance above plaintiffs' dam, and thence running in a northerly direction, substantially parallel with, and but a short distance from, the west bank of the river, to the railway grade and passing through the grade by means of a box flume. Prior to June, 1908, the location of the west bank of the river is represented on the map by the dotted line between points ''A'' and ''B.'' Parallel with, and a short distance from, the west bank of the river as it was before the channel was changed, was a considerable area of land lower than the bank of the river itself, indicated on the map as ''Low Land.'' During the period of high water, which occurred every spring, the water which overflowed the west bank of the river would flow over this low land and return to the main channel some distance below. After the railway company constructed its grade across the low land and across the old channel, the water was confined between this solid embankment and the bluff on the east and south sides of the new channel. During the high-water season in the early part of June, 1908, the west bank of the river at the dam and above and below it for some distance was overflowed, the embankment between the west bank and the railroad ditch completely cut out down to the level of the river-bed, the west bank of the river given the new position indicated on the map, and the plaintiffs' dam left as an obstruction to little more than one-half of this new channel, and wholly useless as a means of raising the water in the river so that it would flow through

the Archer ditch.  In order to repair the damage, it was neces-
sary for plaintiffs to extend the dam westward to the new bank
a distance of about ninety feet (the new portion of the dam
is indicated on the map as the "Extension"), and this was done
at a necessary expense of $1,727.23.  Plaintiffs thereupon
brought this action against the railway company to recover
that amount.  There is also a second cause of action set forth
in the complaint for damages caused to the Archer ditch some
distance below the dam; but from the fact that the amount
of the verdict is exactly the amount claimed in the first cause
of action, it seems reasonably certain that the jury disregarded
the second cause of action altogether.  The briefs of counsel
deal with the first cause of action; and hereafter, in speaking
of the pleadings, it will be understood that reference is made
to the issues arising upon the first cause of action only.

The wrongful acts of the railway company which are said to
have caused the injury to plaintiffs' dam are (a) constructing
the solid grade embankment over and across the old channel and
the low land, thereby preventing the flood waters from spread-
ing over the low lands as they had theretofore done; and (b)
constructing the railroad ditch so close to the west bank of the
river, and failing to place in the ditch, at the point where it
taps the river, a headgate to control the amount of water di-
verted by the ditch.  It is said that because of these alleged
wrongful acts the west bank of the river was washed away
from the west end of the dam, resulting in the injury to plain-
tiffs, for which compensation is demanded.  The cause, being
at issue, was tried to the court sitting with a jury.  At the
conclusion of the evidence, counsel for defendant railway com-
pany moved the court for a directed verdict for defendant, upon
the ground that the dam and head of the Archer ditch were
shown to have been constructed and maintained by the plain-
tiffs upon the land of Bachman under a mere parol license,
which had been revoked by the deed from Bachman and wife
to the railway company.  This motion was denied, the cause
submitted to the jury, and a verdict returned in favor of the

plaintiffs for the amount claimed in the first cause of action. The defendant moved for a new trial, and this motion was granted in an order in which the court gives the reason for its ruling. The reason is the same as that specified as the ground of defendant's motion for a directed verdict. From the order granting a new trial the plaintiffs appealed. Two questions are presented for solution: (1) Did the right of plaintiffs to the use of Bachman's land for their dam and the head of their ditch rest merely in parol license, revocable at the will of Bachman; and (2), if the right amounted only to such license, was it revoked by the deed from Bachman and wife to the railway company?

1. When the Archer dam and ditch were constructed on Bachman's land, there was not any agreement made between the parties. Bachman's consent was not asked; but he knew of plaintiffs' operations, made no objections, and gave them permission to take from his adjacent land brush, rock and earth for the construction of the dam. Under these circumstances, it is urged by appellants that Bachman lost his right to maintain against the plaintiffs either trespass or ejectment, and that his only right, if any, was a right to maintain an action for damages. If the only claim which Bachman could assert against the plaintiffs was one for damages, then we agree with counsel for plaintiffs that such right was personal to Bachman, and did not pass to his grantee, the railway company, by virtue of the deed. But the extent of Bachman's right depends upon the character of plaintiffs' interest at the dam and head of the ditch. It cannot be questioned that at its inception the right of plaintiffs was merely a license resting in parol, a license not coupled with an interest, and for which there was not any consideration whatever paid. There are two classes of cases sustaining appellants' contention. The first proceeds upon the theory that when the licensee expends large sums of money in making the improvement, and such expenditure is made without opposition by the licensor, the license becomes executed and irrevocable; that, in fact, what was in its inception a license.

becomes in reality a grant. Typical of this class of cases is *Rerick* v. *Kern,* 14 Serg. & R. (Pa.) 267, 16 Am. Dec. 497, decided in 1826. The other class proceeds upon the theory of estoppel *in pais;* that, by standing by without making objection and permitting the improvement to be made and large sums of money to be expended, the land owner is estopped to maintain ejectment or to have an injunction. A leading case of this character is *Goodin* v. *Cincinnati & White Water C. Co.,* 18 Ohio St. 169, 98 Am. Dec. 95, decided in 1868. By the second class it is held that the land owner's only remedy is an action for damages for the injury to his property. The doctrine of the Pennsylvania court has been adopted in some other states. In *Roberts* v. *Northern Pacific R. Co.,* 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873, decided in 1895, the doctrine announced by the second class of cases is asserted, though the decision of the Ohio court is not mentioned. The *Roberts Case* has been followed in *New York City* v. *Pine,* 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820, and in *United States* v. *Lynah,* 188 U. S. 445, 23 Sup. Ct. 349, 47 L. Ed. 539, and by some state and other courts. That the doctrine of each of these classes of cases was well recognized long prior to 1898 is sufficiently evidenced by the many decisions upon the subject extant at that time. In *Great Falls Waterworks Co.* v. *Great Northern Ry. Co. et al.,* 21 Mont. 487, 54 Pac. 963, decided in 1898, the same contentions were made that are now urged upon our attention. Particular emphasis is laid by appellants upon the fact that, while the *Roberts Case* above was decided more than three years prior to the *Great Falls Case,* it was not called to the attention of this court, and we are now asked to reconsider the questions decided. But while it is true that the case of *Roberts* v. *Railroad Co.* was not considered by this court, the principle of that case received very thorough attention, and the Pennsylvania and Ohio cases above, and many others supporting the doctrine announced in each of them, were relied upon by the waterworks company, and considered by this court. It was then recognized that the authorities are in conflict upon the subject,

but after a painstaking review, this court announced its conclusion as follows: "Now, the sequence of the rule that an easement can only be created by deed is that a license which merely renders lawful an entry which otherwise would be unlawful cannot, except by prescription—which is equivalent to a deed—become an absolute right in property without practically doing away with the statute of frauds, and completely overturning the common-law rule, as pointed out by Baron Alderson in *Wood* v. *Leadbitter,* 13 Mees. & W. 838, 16 Eng. Ruling Cas. 49. (Browne's Statute of Frauds, sec. 29.) An extended examination of cases bearing upon the doctrine of the revocability of parol licenses has impressed upon us the belief that the sound, the logical, as well as the safe, reasoning, sustains the rule that a parol license of the character of the one under consideration is always revocable at the pleasure of the licensor, so far as any further enjoyment of the privilege extended goes. (Freeman's note to *Lawrence* v. *Springer,* 31 Am. St. Rep. 715.) Modern text-writers, deducing principles from the more recent opinions of the courts, have taken this view of the subject; and to give that security to titles so essentially important in affording protection against flaws, and burdens not imposed by writing, but resting upon verbal permissions or agreements, it is well settled that the doctrine of estoppel is inapplicable, 'inasmuch as the licensee is bound to know that his license was revocable, and that in incurring expense he acted at his own risk and peril.' " The principle of the *Great Falls Case* was again asserted by this court in *Prentice* v. *McKay,* 38 Mont. 114, 98 Pac. 1081; and now, after further consideration, we are thoroughly convinced of the correctness of this court's decision in each of the two cases cited above.

As a further ground of argument in favor of invoking against Bachman the doctrine of estoppel *in pais,* it is urged by appellants that, under the Constitution and laws of this state, they could have acquired their dam site and the right of way for their ditch by condemnation proceedings; but that question was likewise considered in the *Great Falls Case.* We are unable to

see wherein the fact adds anything to the character of plaintiffs' right. They were upon Bachman's land under a mere parol license or they owned a servitude upon his land. As was observed in the beginning, at its initiation plaintiffs' right rested merely in a parol license, and under the authority of this court, in the cases cited above, that right was not augmented by anything done by the parties thereafter, so far as this record discloses. The authorities supporting the decision in the *Great Falls Case* are collected at length in 25 Cyc. 648.

2. Having reached the conclusion that the right of plaintiffs upon Bachman's land rested in a mere parol license, revocable at the will of the licensor, we are brought to a consideration of the second question, viz.: Was that license revoked by Bachman? "A license may be revoked by obstructing the land licensed to be used, but an appropriation of the land to any use inconsistent with the enjoyment of the license works a revocation." (25 Cyc. 651; *Prentice* v. *McKay,* above.) And again: "Where the licensee has movable property on the premises, he should be given reasonable notice of a revocation of the license and an opportunity to remove it. But, where the termination of the license necessitates no removal of property, no notice is necessary." (25 Cyc. 652.) These plaintiffs did not have any removable property upon Bachman's land, and notice of revocation was therefore not necessary. Under the grant in the deed from Bachman and wife to the railway company, the company was authorized (a) to change the channel of Musselshell river; (b) to construct its grade embankment along the right of way over the old river channel and across the low land adjacent; and (c) to construct the railroad ditch. There was not any limitation imposed as to the manner of the use of the lands granted, except that the railway company was to provide some practical method for conveying water for irrigation purposes across its right of way, and, in the absence of any evidence to the contrary, we must assume that the railroad ditch with its box flume fully met that requirement to the satisfaction of Bachman, for whose benefit it was imposed. The right

of the company to construct the ditch in the manner in which it was constructed cannot be questioned. It was excavated upon Bachman's land, with Bachman's consent, and of itself the ditch did not interfere in any manner with whatever right the plaintiffs had. Furthermore, the provision of the deed for the construction of this ditch leaves it discretionary with the railway company to construct it in any manner, at least in any manner satisfactory to Bachman, and, so far as this record goes, the ditch as constructed appears to have met Bachman's approval. The deed also required the company to make a grade crossing; but that would not affect this case in any particular, and the evidence does not disclose whether it was or was not made. There is also the requirement that the company should construct an underground passageway for livestock at the slough, if it could be done in a practical manner, but we are not informed by this record whether that requirement was or was not fulfilled; in fact, the location of the slough is not identified. Neither is there anything to indicate that, if such passageway was not constructed, it was practical to provide for it.

It is plain from this record that plaintiffs' injury arose as the natural consequence of the building and maintenance of the solid grade embankment across the old channel at the initial letter "M" and over the low land immediately adjacent thereto. Such building and maintenance of the grade is not at all inconsistent with the grant contained in the deed, and in thus building the railway company was apparently proceeding in a manner best calculated to secure the safety of the traffic which would be moved over the road, as it was its duty to do. (*State ex rel. Bloomington etc. Co. v. District Court*, 34 Mont. 535, 115 Am. St. Rep. 540, 88 Pac. 44.) Furthermore, the deed does provide: "That neither said party of the second part [railway company] nor its agents have made any agreement, promise, or condition, verbal or written, for or relating to any crossing, passageway, or other privilege over, across, or under said railway; and that the right thereto shall be only that conferred by statute, or by an instrument in writing under the

corporate seal of the party of the second part.'' This is in effect a direct grant to the railway company to construct a solid grade embankment, except for the box flume and the underground passageway for livestock; and we must therefore assume that the railway company carried into execution the plan in contemplation by both parties to the deed at the time of its execution. Now, if the construction and maintenance of the railroad grade as it was built and maintained in the ordinary course of events so far interfered with the right of plaintiffs to maintain their dam and the head of their ditch as that damage would naturally result therefrom, then it must follow that, since the parties to the deed contemplated the use of the right of way as it was actually used, both Bachman and the railway company intended that any further use by the plaintiffs of their dam and ditch would be wholly at their own risk. Any injury which might result would be comprehended by the terms *"damnum absque injuria."* That the injury to plaintiffs was the natural result of the use to which the railway company put the right of way is demonstrated by this record. It is perfectly apparent that a like injury every year during the high-water period can only be effectually avoided by substituting trestlework for the solid embankment across the old channel and the low land; and there is not anything in the record to justify a court in imposing that burden upon the company, particularly in view of the grant contained in the deed, even assuming that the trestlework would be equally safe and as well adapted to the company's use.

There is a suggestion in appellants' brief that, in order to raise the question of the character of plaintiff's right, the defendant should have pleaded it; but it is a sufficient answer here to say that the evidence touching such right was admitted without objection, and will be given the same consideration on appeal as though it was fully warranted by the pleadings. (*Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994; *O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724.)

The trial court held ''that the plaintiffs were mere licensees in the construction of the ditch and dam in question; that their license was revocable; that the conveyance from Bachman to the defendant was a revocation of such license; that, therefore, defendant cannot be held for damages in this action; and that its motion for a directed verdict on the above grounds should have been granted.'' We agree with this view so far as it relates to the first cause of action, and, since that cause of action is now finally disposed of, judgment in favor of the defendant thereon should be entered.

The order granting a new trial is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

(Submitted March 18, 1910. Decided April 2, 1910. )