LEWIS, APPELLANT, *v.* PATTON ET AL., RESPONDENTS.

(No. 2,882.)

(Submitted January 30, 1911. Decided February 8, 1911.)

[113 Pac. 745.]

*Real Property—Parol Licenses—Revocation—Injunction.*

1. Under the rule that a parol license is revocable at the will of the licensor, even though the licensee has expended money in reliance thereon which will be lost to him by the revocation, *held,* that plaintiff who, with the verbal consent of the owner of farm lands adjoining his own, had constructed a private roadway, of a permanent character,

and at an expense of $1,200 and three years' labor, from his dwelling to the public road over a portion of the latter's premises, fencing it, was properly denied an injunction to prevent the heirs of the licensor from obstructing such way.

*Appeal from District Court, Beaverhead County; J. B. Poindexter, Judge.*

ACTION by O. H. Lewis against Margaret Patton and others. From an order denying a temporary injunction, plaintiff appeals. Affirmed.

*Messrs. Pease & Stephenson* submitted a brief in behalf of Appellant. Oral argument by *Mr. H. F. Pease.*

There are two important limitations upon the rule declared in *Great Falls W. W. Co.* v. *Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 963, since affirmed in *Prentice* v. *McKay,* 38 Mont. 114, 98 Pac. 1081, and *Archer* v. *Chicago etc. Ry. Co.,* 41 Mont. 56, 108 Pac. 571, *viz.:* (1) Where there has been an express oral agreement between the adjacent land owners that A shall have a perpetual right of easement over B's land, and A then makes improvements to his financial detriment, such right of easement will be affirmed by the court. (See *Great Falls Case, supra.*) (2) Where A makes improvements upon his own land in reliance upon an existing right of easement over B's land, and B encourages, or fails to dissuade, him, the court will recognize the right upon which A relied. (Washburn on Easements, 4th ed., 112.) In no case arising within this jurisdiction have the facts permitted the application of either of the rules just stated, and in no case has it even been argued that either of them exists. In the case at bar the facts appearing in the record make both of these rules applicable, and doubly distinguish this case from the *Great Falls Case* and all the decisions which have followed it.

This first distinction above noted relates to a situation clearly different from that implied by the word "license." A licensee is but one degree removed from a trespasser; he is upon the land of another by sufferance merely, and has no rights *in futuro.* If he has any equities, they are derived from the laches

or negligence of the land owner. The situation which we distinguish is where the improvements are made under an express agreement for a permanent easement. Here the person making the improvements is in a totally different position from that of a licensee. He does not calculate upon the forbearance of the land owner, but proceeds upon a positive promise that his rights will never be questioned. In principle there is no difference between his position and that of a person in possession under a promise to convey—both agreements are void by the letter of the statute of frauds, but in each case the court suspends the operation of the statute, as invoked to perpetrate a fraud. (*Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *Stevens* v. *Trafton,* 36 Mont. 520, 93 Pac. 810.)

The case best illustrating the situation here presented is *Rindge* v. *Baker,* 57 N. Y. 209, 15 Am. Rep. 475. See, also, *Dempsey* v. *Kipp,* 61 N. Y. 462; *Wiseman* v. *Lucksinger,* 84 N. Y. 31, 38 Am. Rep. 479. If the objection be made that the agreement here contended for was not specific and definite in terms, the answer is obvious: (1) that at no time during the life of Patton was there the slightest disagreement or misunderstanding relative to the right of way, and (2) that the language of the court, in the *Great Falls Case* expressly covers a situation like the present: "A verbal agreement, *even if in the form of a license,*" etc. (21 Mont. 502.)

The consideration for the agreement has next to be considered. The outlays, expenditures and labors of the appellant in this, estimated at $1,200, are ample to support the agreement. To this proposition we cite: *King's Heirs* v. *Thompson,* 9 Pet. (U. S.) 204, 9 L. Ed. 102; *Neale* v. *Neales,* 9 Wall. 1, 19 L. Ed. 590; *Freeman* v. *Freeman,* 43 N. Y. 34, 39, 3 Am. Rep. 657.

The second rule upon which we found our claim is stated by Washburn on Easements, above. It rests upon the different manner in which the common law regards improvements made upon a person's own land, and improvements made by him upon the land of another. When A has at great expense altered and prepared his own land for the use of an easement

over B's land adjoining, relying on B's promise to recognize
such easement, the common law does not regard him as having
made such expenditures at his own risk; but, having been in-
duced to sink money into his land for a certain purpose, it
would be the grossest inequity to permit B thereafter to forbid
the use and render such expenditures nugatory. *Morse* v.
*Copeland,* 2 Gray (Mass.), 302, illustrates this distinction.
(See, also, *Dempsey* v. *Kipp, supra.*)

*Mr. John Lindsay* submitted a brief in behalf of Respondents,
and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

Appeal from an order denying a temporary injunction. The
parties to this action own adjoining ranches in Beaverhead
county. In order for plaintiff conveniently to get to the public
highway from his dwelling-house, it is necessary for him to
pass over a small portion of defendant's land. In 1903 or 1904
plaintiff constructed a roadway of a permanent character from
his dwelling to the public road, fenced the same, and used it
uninterruptedly until late in 1909, when defendants obstructed
such roadway and threatened to continue such obstruction.

In his complaint the plaintiff alleges that he owns a right
of way for such roadway over the lands of defendants. Upon
filing this complaint and an affidavit in support of it, the dis-
trict court issued an order to show cause, and a hearing was had.
Upon the hearing the plaintiff testified that for four hundred
feet or more his roadway over the land of defendants was con-
structed through a swamp, and for seven hundred feet or more
the road was built through the same swamp on plaintiff's land;
that it cost about $1,200 to build the road; that it was built
in a manner designed to be permanent; that it was built and
fenced at plaintiff's expense; that he was engaged in work
upon it for three years or more, and enjoyed the uninterrupted
use of it for two years after it was completed; that at the time
the road was built, Hugh Patton, since deceased, the husband

of Margaret Patton, owned the Patton ranch; and that before he commenced building the road he had a conversation with Hugh Patton. When asked to give the conversation an objection was interposed, but overruled *pro forma*, with the right reserved in counsel for defendants to move to strike out the evidence. Plaintiff then testified: "I went to Patton and told him I wanted to build a road, and showed him the route, and he very willingly consented to go and look it over—the proposed road and the old road. After we looked over the old road he said to me, 'We are uncertain where the lines are, and the route you propose is the best, and I have no objection to it.' And he consented to it. * * * Q. When you were talking to Mr. Patton about this matter, was there any conversation in regard to the manner in which the road was to be built? A. Yes. He said: 'Now, let me make a suggestion as to how to build this road, having had a great deal of experience in making roads; I would corduroy the road.' I told him, 'I don't want to make a temporary road, I want to make a permanent road.' And when I got through with my statement as to how I wanted to make the road he complimented me and said my theory was right. He says: 'You will make a road there that will last forever.' And at different times in the construction of this road he complimented me in regard to the way I was building it." Plaintiff further testified that while he was building the fence along this roadway, Patton came to his work and complimented him upon the character of fence he was building, saying: "Your fence is like your road; it is very permanent. You will have a fence there forever." And again plaintiff testified that when he was constructing a gate at a point where the road connected with the public highway, Patton came to him and complimented him upon the manner in which he was doing the work and in a joking way said: "I wouldn't have given you this right of way had I known you were going to put up so much better a gate than mine." Upon cross-examination plaintiff testified that he never had any writing with Patton concerning this right of way. Defendant moved that all evidence of the conversation between plaintiff and Hugh

Patton be stricken out, and this motion was sustained and the injunction refused. The foregoing is all the evidence material to the question which was before the lower court.

In *Great Falls Water W. Co.* v. *Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 963, this court reviewed at great length the authorities dealing with the question of a license resting in parol. The doctrine of that case was approved in *Prentice* v. *McKay,* 38 Mont. 114, 98 Pac. 1081, and in *Archer* v. *Chicago, Milwaukee & St. P. Ry. Co.,* 41 Mont. 56, 108 Pac. 571. But it is contended that the facts of this case do not bring it within the rule announced in the cases above, but rather within two exceptions to the rule—exceptions which it is said have been recognized by this court. We do not agree with counsel for appellant that they state the first exception, so called, correctly.

(a) It is a well-settled rule in equity that where A agrees orally to convey a right of way to B, and there is a sufficient consideration for such agreement, and, acting upon it, B enters into possession of the right of way and makes improvements to his financial detriment, equity will protect the right. The principle of the rule was involved and applied in *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918. The rule itself is well illustrated by the case of *Dempsey* v. *Kipp,* 61 N. Y. 462. The underlying principle of the rule, however, is that there was such a contract between the parties and such part performance that equity would, in a proper action, decree specific performance. Direct reference to this rule is made in the course of the opinion in *Great Falls Water W. Co.* v. *Great Northern Ry. Co.,* above. But we are unable to gather from the record of this case any evidence of a contract between Patton and Lewis by which Patton agreed to convey the right of way over the Patton ranch to Lewis. At most the evidence discloses mere consent on Patton's part that Lewis might construct the roadway, a consent which does not imply anything more than a bare license. We are unable to distinguish this case upon its facts from either the *Great Falls Case* or the *Archer Case,* above.

(b) The second so-called exception to the rule is stated by Herman on Estoppel, section 1140, volume 2, as follows: "Where

the owner of an estate has stood by and seen another expend money upon an adjacent estate, relying upon an existing right of easement in the first-mentioned estate, and without which such expenditure would be wholly useless and wasted, and has not interposed to forbid or prevent it, equity has enjoined him from interrupting the enjoyment of such easement.'' Instead of being an additional exception to the rule, this is but the application of the principle of the first exception to a different state of facts. It presupposes that there was an express oral agreement to convey and part performance.

There is not any question of a right by prescription involved here, and that there is but a single exception to the rule that an agreement for the conveyance of an interest in real estate (other than a lease for not more than one year) must be evidenced by some writing, is determined by our Code. Our statute of frauds, section 5091, Revised Codes, provides: ''No agreement for the sale of real property, or of any interest therein, is valid unless the same, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged, or his agent, thereunto authorized in writing; but this does not abridge the power of any court to compel the specific performance of any agreement for the sale of real property in case of part performance thereof.'' The wisdom of the rule is well illustrated in this case. Here the attempt is made to found a claim to a part of the Patton ranch upon oral negotiations had between Lewis and Hugh Patton. Hugh Patton, the only person who could deny or explain those negotiations, is dead, and the statute cited above furnishes his heirs their only defense to a claim of this character. Of course, if there was in fact an agreement between Lewis and Hugh Patton by which Patton contracted to convey to Lewis the right of way for the road, the death of Patton would not necessarily defeat Lewis's right to have specific performance decreed; but as said by this court in *Finlen* v. *Heinze,* above, quoting from Mr. Justice Story in *Smith* v. *Burnham,* 3 Sum. 435, Fed. Cas. No. 13,019: ''It is a general rule not to interfere to direct specific performance of any agreement where the terms of the contract are not all

definite and full and in its nature and extent are not made out by clear and unambiguous proof."

A mere license is revocable at the will of the licensor, and it is not a defense that the licensee has expended money upon the faith of it which will be lost to him, for, as said by this court in the *Great Falls Case* above: "The licensee is bound to know that his license was revocable, and that in incurring expense he acted at his own risk and peril." In 25 Cyc. 647, it is well said: "To hold otherwise would be to override the statute of frauds and convert an executed license into an estate in land, which is going a greater length than equity ever went under the doctrine of part performance." Neither will the character of the improvement made change a license into a grant.

While the authorities do not all agree upon the application of these principles, we prefer to adhere to the doctrine heretofore announced by our own court.

The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.