RENTFRO ET AL., RESPONDENTS, *v.* DETTWILER, APPELLANT.

(No. 7,121.)

(Submitted November 8, 1933. Decided November 17, 1933.)

[26 Pac. (2d) 992.]

*Mr. Walter L. Pope* and *Mr. J. C. Garlington,* for Appellant, submitted a brief; the latter argued the cause orally.

*Mr. Elmer E. Hershey,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Rudolph Dettwiler, has appealed from a decree in favor of the plaintiffs J. C. and Catherine Rentfro,

declaring that the plaintiffs and the defendant have equal rights in a certain irrigating ditch, and enjoining the defendant from interfering with the equal use of the ditch by the plaintiffs.

In June, 1931, the plaintiffs brought action against the defendant by filing a complaint in which certain lands, owned by the plaintiffs and the defendant, respectively, are described, and in which it is alleged that on or about the twenty-fifth day of April, 1922, the plaintiffs and the defendant jointly made an appropriation of 150 inches each of the waters of the Jocko River in Lake county, by means of a ditch 20 inches deep and 60 inches wide, running from the river to and across the lands of the defendant and then to and upon the lands of the plaintiffs. It is then alleged that the parties jointly maintained the ditch and used the appropriated water through the same up to April, 1931, when the defendant obstructed the ditch by means of dams placed therein, and prevented the plaintiffs from using the water through it.

The defendant interposed a general demurrer to the complaint, which was overruled, and then filed a general denial of the allegations of the complaint.

On the trial the defendant first objected to the introduction of any evidence on the ground that the complaint does not state a cause of action, and thereafter repeatedly objected to questions propounded, on the ground that an interest in land cannot be established by parol testimony. These objections form the bases of defendant's fifteen assignments of error, which are here argued from the premise that the defendant but gave the plaintiffs permission to use his ditch, which permission was a mere license, revocable at will, and which was revoked in April, 1931.

The facts disclosed by the testimony are substantially as follows: The land involved is on the Flathead Indian Reservation, in Lake county. For a period of years, beginning in 1919 and ending in 1925, the defendant had leased and resided upon the east half of the northwest quarter of section 35, township 17 north, range 20 west, known as the Callahan

place. In 1919 he purchased, at an "Indian sale," the west half of the quarter-section, an "Indian allotment." The Jocko River, flowing in a southwesterly direction, cuts the southeast corner of the Callahan land and, after clearing the remainder of the quarter-section, flows in a northwesterly direction through portions of section 35 and section 27, cutting the southwest corner of the northeast quarter of that section.

There had existed on the Callahan-Dettwiler quarter-section, from a time prior to the opening of the reservation to settlement, a small ditch, made by running one or two plow furrows. This ditch tapped the Jocko and ran in a northwesterly direction across the Callahan and Dettwiler land to a point just south of Dettwiler's north line. Dettwiler appropriated the ditch to his own use and, by diverting water from the river, put approximately 33 acres of land under cultivation.

In the spring of 1921 the plaintiffs acquired the west half of the northeast quarter of section 27, and, with the assistance of a surveyor, J. C. Rentfro was seeking to locate a line for a ditch from the river at some point within the intervening half mile between the south line and defendant's north line, when he met Dettwiler in friendly converse. Dettwiler told Rentfro that he could not maintain a ditch on that low ground, as the river would wash it out every spring, and advised him to build on the ridge to the east and connect with the end of his ditch. The two are not in accord as to just what was said with reference to the use of the old ditch. Dettwiler's testimony is that he said: "To accommodate you for the present you can just connect with my ditch and it will be all right," and "if you connect with my ditch and keep up the ditch through my place to the Callahan place, * * * it would be all right." Rentfro's testimony is that Dettwiler "suggested that I come up through his place with a ditch; there was no question of the time limit or anything like that; * * * he just simply told me I might go up through his

place with the ditch. * * * I considered it a friendly act."

That year, 1921, Rentfro constructed his ditch from the end of the ditch on Dettwiler's land to his land, and irrigated a certain portion of his 80 acres by means of the water thus obtained.

In 1922 both parties desired to bring additional land under cultivation. There was an abundance of water available, but the Dettwiler ditch would not carry sufficient water for the enlarged use by either party. In April the parties joined in executing and filing a notice of the appropriation of 300 inches of the waters of the river, or 150 inches for each, which notice recites that the appropriation was to be made by means of a ditch 60 inches wide and 20 inches deep, and that the appropriators claim the ditch and the right of way therefor from the point of diversion to the point of final discharge. Working together, the appropriators forthwith constructed a ditch of the designated dimensions on the line of the old ditch, or enlarged the old ditch to those dimensions, and thereafter constructed a permanent double headgate at the point of diversion from lumber furnished by Rentfro, and later still ran a wingdam out into the river, again by the use of lumber furnished by Rentfro.

In 1925 Dettwiler built a house on his land, moved thereto and gave up the Callahan place, which was leased for 1925, 1926 and 1927, to Evan J. Williams, and was in 1928 sold to J. A. Hunt. While in possession of the Callahan place, Dettwiler increased the irrigated acreage on his land and irrigated tracts on each 80 acres from the ditch. During his tenancy Williams assisted Dettwiler and Rentfro in the work on the headgate, and he and Rentfro ran a ditcher the full length of the ditch.

When Hunt was investigating as to the advisability of purchasing the Callahan place, he consulted Dettwiler as to the availability of water, and was told by Dettwiler that "there was three that was interested in the ditch—Callahan, Dettwiler and Rentfro." Neither Callahan nor his tenant or suc-

cessor made any objection to Rentfro's activities in enlarging, improving, and using the ditch, and it was used as a triparty ditch up to April, 1931, when Dettwiler contending that Rentfro used the ditch in such manner as to cause his lands to be flooded, cut the ditch at the lower end of his place and deprived Rentfro of its further use.

The defendant adduced some evidence to the effect that, in 1926, Rentfro had sought to find a new line for a ditch without crossing the Dettwiler place, and that later a ditch had been constructed by the government under the Flathead irrigation project, which would serve Rentfro. The defendant contends that the parties had this ditch in contemplation at the time Dettwiler gave Rentfro permission to tie onto his ditch, having in mind the termination of Rentfro's license on the completion of such a ditch. This ditch could, however, be used only by a member of the project on payment of the charges demanded.

The court found for the plaintiffs on all of the issues presented, thus determining all conflicts in the evidence in favor of plaintiffs' version, and the extent of our authority now is to determine whether or not the evidence preponderates against the court's decision. (*Ferguson* v. *Standley,* 89 Mont. 489, 300 Pac. 245.)

The position taken by defendant's counsel is that the conversation had between Dettwiler and Rentfro, even as detailed by the latter, constituted but a parol license, revocable at will. They rely upon the doctrine heretofore announced by this court that a parol license (not coupled with an interest and for which not any consideration has been paid) is revocable at will and at any time, even though the licensee has fully acted upon it and in doing so has expended his time and money. (*Great Falls Waterworks Co.* v. *Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 963; *Archer* v. *Chicago, M. & St. Paul Ry. Co.,* 41 Mont. 56, 108 Pac. 571, 137 Am. St. Rep. 692; *Lewis* v. *Patton,* 42 Mont. 528, 113 Pac. 745.)

The courts of many of our sister states refuse to apply this harsh rule to ditch controversies, holding that the perform-

ance by the licensee through the expenditure of his labor and money is sufficient to take the right out of the operation of the statute of frauds (*Stoner* v. *Zucker*, 148 Cal. 516, 83 Pac. 808, 113 Am. St. Rep. 301, 7 Ann. Cas. 704; *Miller & Lux* v. *Kern County Land Co.*, 154 Cal. 785, 99 Pac. 179; *Cairns* v. *Haddock*, 60 Cal. App. 83, 212 Pac. 222; *Clendenin* v. *White*, 62 Cal. App. 664, 217 Pac. 761; *Maple Orchard Grove & Vineyard Co.* v. *Marshall*, 27 Utah, 215, 75 Pac. 369; *Arterburn* v. *Beard*, 86 Neb. 733, 126 N. W. 379), or that the revocation of the license after the licensor has stood by and permitted the licensee to expend his time and money in the completion of his ditch would be a fraud upon the licensee which a court of equity will prevent by estoppel. (*Lee* v. *McLeod*, 12 Nev. 280; *Heisley* v. *Eastman*, 102 Or. 137, 201 Pac. 872; *Harsin* v. *Pioneer Irr. Dist.*, 45 Idaho, 369, 263 Pac. 988.) This latter declaration is in line with our own decisions, wherein we declare that "the statute of frauds was never intended to cloak fraud, but to prevent it." (*Wells* v. *Waddell*, 59 Mont. 436, 196 Pac. 1000, 1001; *Besse* v. *McHenry*, 89 Mont. 520, 300 Pac. 199.)

However, we cannot thus disregard the plain prohibition of the statute of frauds; it declares that all contracts "for the sale of real property, or of an interest therein" must be in writing. (Sec. 7519, Rev. Codes 1921.) A permanent right of way across the lands of another constitutes "an interest" in the real estate; an easement. (*Mannix* v. *Powell County*, 60 Mont. 510, 199 Pac. 914.) A license does not come within the provisions of the statute, and may be given by parol because it does not create an interest in the land; it is not a contract, but merely the permission or authority to do a particular act or series of acts upon the land of another without possessing an interest therein. (3 Kent's Commentaries, 542; Bouvier's Law Dictionary.) This temporary authority may be revoked at will and thus the burden removed from the land at any time; nothing that the licensee can do can supply the elements of a contract, lacking in a mere license

but necessary to create an easement. "The licensee is conclusively presumed, as a matter of law, to know that the license is revocable at the pleasure of the licensor, and if he expends money in connection with his entry upon the land of the latter he does so at his peril. Any other doctrine would render most licenses irrevocable and make them operate as conveyances of interests in land." (3 Farnham on Waters & Water Rights, 2327.) This author declares that the true rule with reference to licenses is stated in *Great Falls Waterworks Co.* v. *Great Northern Ry. Co.*, above, and that the error, into which the courts holding that performance on the part of the licensee or his expenditure of money in reliance upon the license, renders the license irrevocable, is largely due to the efforts of courts to relieve the licensee in hard cases. (Id., pp. 2319–2326.)

If, therefore, we were to consider only the conversation had ▉▉▉▉ between the parties in 1921, as do counsel for the defendant in their brief and argument, a reversal of the judgment would be compelled. But, it will be noted, the cause of action set up in the complaint is grounded, not on the conversation and what Rentfro did in reliance thereon, but on what was done in 1922 and thereafter. The conduct of the parties, subsequent to 1921, clearly implies an agreement or understanding that, if Rentfro would join with Dettwiler in the appropriation of sufficient water for their several needs and would assist him in the construction of an adequate ditch on the line of the old one, with permanent means of diversion at the intake, furnishing all necessary material therefor, Rentfro should have an interest in the ditch and right of way therefor, equal to that of Dettwiler.

A contract may be either express or implied; the latter being one the existence and terms of which are manifested by conduct. (Secs. 7514–7516, Rev. Codes 1921). The conduct of the parties manifests the existence and terms of an implied contract, having all the essential elements to render it valid and binding. (Sec. 7468, Id.) The important element of consid-

eration is furnished by the benefit conferred, or to be conferred, upon Dettwiler and the prejudice suffered by Rentfro. (Sec. 7503, Id.)

The intention of the parties is a matter of prime consideration, but, so far as the promisor is concerned, this element may be furnished by his conduct and declarations. (*Glantz* v. *Gabel,* 66 Mont. 134, 212 Pac. 858, and cases cited.) The conduct of Dettwiler during the period from 1922 to 1931, coupled with his declaration to Hunt, an interested party, that the ditch was a triparty ditch, is sufficient to support a finding that the parties intended to contract as above outlined.

Full performance on the part of Rentfro takes the contract ''out from under the operation of the statute'' (*Besse* v. *McHenry,* 89 Mont. 520, 300 Pac. 199, 201), and equity considers that done which ought to have been done, so that in such a situation the decree awarding the plaintiff his interest in the ditch is in the nature of a decree of specific performance of the contract to convey.

Where the evidence establishes an express or implied contract, rather than a mere license, and a consideration moving to the promisor, or that the parties co-operated in the work for their mutual benefit (both of which conditions are present in the case at bar), the promisee who has performed on his part and entered into possession is entitled to a decree establishing his right as effectively as though he held a deed to the easement acquired. (*Shaw* v. *Proffitt,* 57 Or. 192, 109 Pac. 584, 110 Pac. 1092, Ann. Cas. 1913A, 63; *McPhee* v. *Kelsey,* 44 Or. 193, 74 Pac. 401, 75 Pac. 713; *Munsch* v. *Stelter,* 109 Minn. 403, 124 N. W. 14, 134 Am. St. Rep. 785, 25 L. R. A. (n. s.) 727; *Ferguson* v. *Spencer,* 127 Ind. 66, 25 N. E. 1035; *Vannest* v. *Fleming,* 79 Iowa, 638, 44 N. W. 906, 18 Am. St. Rep. 387, 8 L. R. A. 277; *Gilmore* v. *Armstrong,* 48 Neb. 92, 66 N. W. 998; *Wynn* v. *Garland,* 19 Ark. 23, 68 Am. Dec. 190; *Flickinger* v. *Shaw,* 87 Cal. 126, 25 Pac. 268, 22 Am. St. Rep. 234, 11 L. R. A. 134.)

· The complaint states a cause of action, and the evidence preponderates in favor of the finding and decree. The court reached the correct conclusion. The judgment is affirmed.

Mr. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied December 5, 1933.