INDIANAPOLIS AND CINCINNATI TRACTION COMPANY *v.* ARLINGTON TELEPHONE COMPANY.

[No. 7,237. Filed May 23, 1911.]

1. APPEAL.—*Determination of.—Demurrer to Complaint.—Exceptions to Conclusions of Law.*—The overruling of a demurrer to the complaint is not material where the facts are specially found, and the exceptions to the conclusions of law present the same questions as those arising on the demurrer. p. 659.

2. TRIAL.—*Conclusions of Law.—Exceptions.*—Exceptions to the conclusions of law admit, for the purpose of such exceptions, that the facts are correctly found. p. 659.

3. APPEAL.— *Questions Presented.— Interurban Railroads.— Telephones.—Priorities in Use of Streets.*—The question of priority between the use of streets and highways by an interurban railroad company and a telephone company does not arise, where the special findings show that the telephone company's lines were located on private ground. p. 663.

4. EASEMENTS.— *Telephones.— Executed License.*— Where a telephone company obtains an oral license to place its poles upon private grounds and it expends money in placing its poles and stringing its wires, such license becomes an irrevocable easement. p. 663.

5. EASEMENTS.—*Sale of Land.—Notice.—Telephones.*—The sale of land on which an easement exists for the operation of a telephone line does not affect the telephone company's rights, the existence of the line on the land constituting notice of the company's easement. p. 664.

6. EASEMENTS.—*Deeds.*—An easement appurtenant to real estate passes with the grant and becomes a burden on the servient estate in the hands of the subsequent owner. p. 664.

7. RAILROADS.—*Interurban.—Telephones.—Readjustment of Wires. —Damages.*—Where the construction of an interurban railroad necessitates the readjustment of a telephone company's wires, the interurban company is liable for the reasonable expenses thereof. p. 664.

From Rush Circuit Court; *Will M. Sparks,* Judge.

Action by the Arlington Telephone Company against the Indianapolis and Cincinnati Traction Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Smith, Cambern & Smith,* for appellant.

*Douglas Morris* and *W. C. McColgin,* for appellee.

ADAMS, J.—Action by appellee against appellant to recover damages accruing on account of being compelled to reconstruct its telephone lines across appellant's right of way. The complaint was in one paragraph, to which a demurrer for want of sufficient facts was overruled, and the cause was put at issue by a general denial. The evidence was heard by the court, and, upon request of both appellee and appellant, the court made a special finding of facts, and stated its conclusions of law thereon. Appellant excepted to the conclusions of law, a motion for a new trial was overruled, and judgment was rendered upon the special findings in favor of appellee.

The errors assigned and relied upon for reversal are (1) in overruling the demurrer to the amended complaint;

(2) in the conclusions of law stated; (3) in overruling appellant's motion for a new trial.

It is unnecessary to consider separately the first specification of error. The rule is well settled by the decisions of the Supreme Court and this court, that the overruling of a demurrer to a complaint is not material in an action where the court finds the facts, and states conclusions of law thereon, and the exceptions to the conclusions of law present the same questions as those arising on demurrer to the complaint. *Fry* v. *Hare* (1906), 166 Ind. 415; *Board, etc.,* v. *Wolff* (1906), 166 Ind. 325; *Ross* v. *Van Natta* (1905), 164 Ind. 557; *Goodwine* v. *Cadwallader* (1902), 158 Ind. 202; *Woodward* v. *Mitchell* (1895), 140 Ind. 406; *Eisman* v. *Whalen* (1907), 39 .Ind. App. 350; *Chicago, etc., R. Co.* v. *Yawger* (1900), 24 Ind. App. 460.

It is also the settled law of this State, that exceptions to the conclusions of law admit that the facts have been fully and correctly found for the purposes of the exceptions. *National State Bank* v. *Sandford Fork, etc., Co.* (1901), 157 Ind. 10; *Blair* v. *Curry* (1898), 150 Ind. 99; *City of Indianapolis* v. *Board of Church Extension* (1902), 28 Ind. App. 319; *Ladd* v. *Kuhn* (1901), 27 Ind. App. 535; *F. C. Austin Mfg. Co.* v. *Smithfield Tp.* (1899), 21 Ind. App. 609.

The court found the facts to be substantially as follows: Appellee is a corporation which was organized and in operation in 1902, with its office in the unincorporated village of Arlington, Rush county, Indiana. Main street in the village of Arlington runs north and south. The right of way of the Cincinnati, Hamilton and Dayton railway, from the east side of said village extends slightly north of west through it. North of the Cincinnati, Hamilton and Dayton railway's right of way, a highway, known as Phillips alley, extends west from Main street for a distance of 165 feet, where it opens into another highway, known as the

north-and-south alley, which extends north one block, and opens into a street extending east and west. Said north-and-south alley was not, and never has been, opened for travel south of the point where it joins Phillips alley. The real estate west of Main street, south of Phillips alley, and north of the Cincinnati, Hamilton and Dayton railway company's right of way, was owned by Rebecca Sampson, and was unimproved, except by a store building located on the east sixty feet thereof. The west part was unenclosed and unimproved, and had been so for forty years. Appellee in 1902 acquired from Mrs. Sampson the right to erect a telephone pole near the west end of said real estate, and near the south line thereof. Pursuant to said right, appellee erected a pole which remained in place, and was used by appellee until the latter part of December, 1904, when its wires were placed underground, and another pole erected in the north-and-south alley, near the east line thereof, and immediately north of Phillips alley. In 1902 appellee had strung twenty-eight telephone wires on the pole located on the property of Mrs. Sampson, and, by means of said wires, was giving telephone service to more than fifty-six patrons of said company. Said wires, at the point of intersection with appellant's right of way, were twenty-five feet high. Appellant is a corporation organized in 1903, and authorized to construct an interurban railway from the city of Indianapolis to the city of Rushville, through the village of Arlington, and to use electricity as its sole motive power. The right of way of appellant is sixty-six feet wide, and through the village of Arlington, lies immediately north of the right of way of the Cincinnati, Hamilton and Dayton Railway Company. Appellant, in June, 1903, acquired by purchase from Mrs. Sampson, as a part of its right of way, the vacant property upon which said telephone pole was located. Appellant erected poles along said right of way on which it suspended its trolley wires, and also erected poles on which it

MAY TERM, 1911.                    661

Indianapolis, etc., Traction Co. *v.* Arlington Tel. Co.—47 Ind. App. 657.

fastened its high-tension wires, for the purpose of transmitting electricity at a high voltage, to wit, 33,000 volts, for the propelling of its cars. On November 25, 1904, there were six of said high-tension wires on said poles, the highest of which, at the point of intersection with appellee's telephone wires, was thirty-two feet above the ground. On said day appellant notified appellee in writing that it intended to put up trolley and other wires, "over and across the highway at Arlington, along which you are now, as we understand, maintaining a telephone line," also stating that it would be necessary for appellee to adjust the height of its wires so that they would not come in contact with appellant's wires, and saying further: "This you can do by setting a high pole on each side of our right of way and running your wires above our wires, or you may run a lead covered cable under our tracks, from one side of the right of way to the other. The latter, we understand, is more desirable for telephone purposes, so as to avoid all interference from electric current on our line. It will be desirable both for you and for us that you attend to this matter promptly, as the electric current will be turned into our lines in a short time. If you desire to put a lead covered cable under the right of way, and will notify us, we will execute to you a written license authorizing the same." On November 29, 1904, appellee replied to this notice saying: "We will comply with your demands to change our telephone wires, to prevent interference with your wires, but, in doing so, the Arlington Telephone Company waives no right to damage from your company, and further states that it will look to you for compensation for all expenses required in making the change." Within the next forty days appellee did encase its wires in a lead cable, and placed it underground across the right of way of appellant, and extended it under the right of way of the Cincinnati, Hamilton and Dayton Railway Company.

The value of the time, labor and material required to make such change was $199. It was necessary for appellee either to place said wires underground or elevate them above the high-tension wires of appellant, and to have placed the telephone wires above said high-tension wires would probably have endangered the lives and property of the patrons of appellee, and the cost of changing said wires, by suspending them above the high tension wires, and maintaining them in a reasonably safe condition suspended from poles, would have been more than $200. Appellant, prior to this time, had duly obtained from the Board of Commissioners of the County of Rush the right to construct and maintain its railway tracks in and across the highways in said county. The cost of placing appellee's wires under appellant's right of way in the manner in which it was done—from a pole on each side of said right of way, and run up said pole to a height of twenty-five feet—would be $70. Appellee had not, previous to the time appellant acquired its right of way through the village of Arlington, any easement in real estate upon which to erect telephone poles south of Phillips alley, and said north-and-south alley, and north of the right of way of the Cincinnati, Hamilton and Dayton railway, except that acquired from Mrs. Sampson, at a point 163 feet west of Main street, and did not afterwards acquire any right within said territory to erect poles. Appellant never offered appellee permission to erect and maintain poles on its right of way, and if appellee had placed its wires under appellant's right of way, and over the Cincinnati, Hamilton and Dayton railway's right of way, it would have been necessary to carry the cable on the south side of appellant's right of way up a pole for a distance of twenty-five feet, and the pole so carrying said extended cable would have to be securely anchored from the north. Appellee never acquired, nor did appellant ever offer, any right to set anchors within its right of way, and it would have been

MAY TERM, 1911. 663

Indianapolis, etc., Traction Co. *v*. Arlington Tel. Co.—47 Ind. App. 657.

impracticable to anchor a telephone pole set on the south side of the right of way to an anchor placed on the north side of said right of way. Appellant has never paid any part of the expense of making said change.

The court found that appellant had acquired, from the Board of Commissioners of the County of Rush, the right to construct and maintain its railroad tracks in and 3. across the highways in said county. In view of this grant, appellant insists that the interurban company has priority of right, over a telephone company, in the highways and in the streets and alleys of the unincorporated towns in Rush county, and can only be held liable to appellee for damages unnecessarily or negligently inflicted. Neither the proposition urged nor the authorities cited can be considered in the determination of this case. The record before us does not require nor call for a decision upon the conflicting rights of an interurban railroad company and a telephone company in the use of highways, streets and alleys.

It affirmatively appears, from the facts found, that said pole and wires of appellee were located upon private property, and not upon any public highway, street or alley. The court also found that in 1902 appellee acquired the right to erect a pole upon the real estate of Mrs. Sampson. The finding does not show how this right was ac- 4. quired, but, assuming that it was by a mere parol license, even this slender right, after appellee had expended money and labor in the erection of the pole, became an executed license, and was irrevocable.

It has frequently been held in this State that an executed license, the execution of which required the expenditure of money and labor, is regarded in equity as an executed agreement for a valuable consideration, and although a parol license for the use and occupation of real estate, it is irrevocable. *Ferguson* v. *Spencer* (1891), 127 Ind. 66; *Nowlin* v. *Whipple* (1889),.120 Ind. 596, 6 L. R.

664    APPELLATE COURT OF INDIANA,

Indianapolis, etc., Traction Co. *v.* Arlington Tel. Co.—47 Ind. App. 657.

A. 159; *Joseph* v. *Wild* (1896), 146 Ind. 249, 253; *Town of New Castle* v. *Lake Erie, etc., R. Co.* (1900), 155 Ind. 18; *Oster* v. *Broe* (1903), 161 Ind. 113; *Roush* v. *Roush* (1900), 154 Ind. 562, 570; *Buck* v. *Foster* (1897), 147 Ind. 530, 532, 62 Am. St. 427; *Knoll* v. *Baker* (1904), 34 Ind. App. 124; *Rerick* v. *Kern* (1826), 14 Serg. & R. 267, 16 Am. Dec. 497; *Messick* v. *Midland R. Co.* (1891), 128 Ind. 81, 82.

When the license became executed, Mrs. Sampson could not revoke it, and when the real estate upon which the pole stood was conveyed to appellant, with notice, the real estate was taken over with its burden. The location and obvious character of the telephone pole, on appellant's newly-acquired right of way, was sufficient to put appellant upon inquiry, which, in this case, would amount to notice of the easement. *Hodgson* v. *Jeffries* (1876), 52 Ind. 334, 341; *Paul* v. *Connersville, etc., R. Co.* (1875), 51 Ind. 527.

An easement appurtenant to real estate passes with the grant, and becomes a burden upon the servient estate in the hands of the subsequent owners. *Robinson* v. *Thrailkill* (1887), 110 Ind. 117, 120; *Nowlin* v. *Whipple, supra; Steinke* v. *Bentley* (1893), 6 Ind. App. 663.

It will therefore be seen that the rights of appellee in the real estate, acquired by appellant for its right of way, were not affected by the purchase, and that appellee could not be required to remove or change its pole and wires from said right of way without being compensated for the expense made necessary by such change. When appellant constructed its railroad, and strung its high-tension wires, on account of the dangerous character of such wires, it became necessary for the telephone wires to be either elevated or run underground across said right of way. Appellant ordered appellee to change its pole and wires, and suggested the underground

method as being the most approved and safest. Appellee consented to make the change, but reserved its right to collect damages for the expenses incurred. The wires were encased in a lead cable, and run under the tracks of appellant, and also under the tracks of the Cincinnati, Hamilton and Dayton railway, immediately south of appellant's right of way. The court found that this was not only the best method, but the cheapest, and that it was impracticable to run said wires underground across appellant's right of way, and overhead across the right of way of the Cincinnati, Hamilton and Dayton railway.

The court also found that the cost of making the change required by appellant was $199, and that appellee was damaged in said amount. From the facts found, the court stated, as a conclusion of law, that appellee was entitled to recover from appellant the sum of $199 and costs.

There was no error in this conclusion of law. The evidence not being in the record, it does not appear that the court erred in overruling appellant's motion for a new trial.

The judgment is affirmed.