WILLIAM E. HENRY *et ux.* *vs.* JANE E. DALTON.

MAY 27, 1959.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

POWERS, J.  This bill in equity was brought to establish
an irrevocable right in the land of the respondent for use
as a driveway to the garage of the complainants.  The cause
was heard in the superior court on bill, answer and proof,
and thereafter a decree was entered denying and dismissing
the bill of complaint.  From such decree the complainants
have prosecuted an appeal to this court.

Their reasons of appeal are that the decree and the deci-
sion on which it is based are against the law, against the

evidence and against the law and the evidence and the weight thereof.

The testimony discloses that on May 27, 1922 the complainants purchased a house on Carver street in the city of Pawtucket and that within a month thereafter respondent's husband purchased the adjoining property. It further appears that the distance between the foundations of both houses is approximately 14.5 feet, only 5.8 feet of which is the property of complainants. It is mutually agreed that at the time the parties purchased their respective properties a wooden fence separated the properties along the boundary lines. A few years later this fence was taken down and replaced by a hedge, which although planted by respondent's husband was a joint venture and Henry and Dalton each contributed one half of its cost.

It is undisputed that prior to 1938 the respondent and her husband owned a garage in the rear of their property, which from time to time was rented to different tenants, one of whom was the complainant William E. Henry. Access to the garage was had over the property of respondent between her house and the hedge.

In 1938 complainant William E. Henry spoke to respondent's husband about removing the hedge from the boundary line and making common use of their respective properties as a driveway. Henry explained that he wished to construct a two-car garage at the rear of his property since he and his son each had a car. It is undisputed that William Dalton, husband of respondent, readily gave his permission and respondent states in her deposition that her husband advised her of the request and of his consent. The hedge was removed and complainants filled in their own strip to bring it up to grade with their neighbors' land. At the same time the Henrys constructed a two-car garage at the rear of their property.

Although there is conflicting testimony as to whether or not thereafter the Daltons were careful to drive only over

the strip which constituted their exclusive property, it is undisputed that until sometime in 1957 the Henrys and the Daltons and their friends used the driveway freely without incident and relations between the parties were friendly and harmonious. In 1954 respondent and her husband placed two posts in the driveway with a chain between them to prevent strangers from backing in and out. It appears that this was done because the Daltons were concerned for the safety of their grandchildren. This measure was taken without consulting the Henrys, but complainant William Henry testified that relations remained as friendly as ever.

In November 1956 complainants negotiated for the sale of their home in Pawtucket intending to purchase a home in the town of Cumberland, which property they had visited with the Daltons in June of that year. The complainant husband testified that in June 1956 he told William Dalton of this intention. He stated that both Mr. and Mrs. Dalton accompanied them on a visit to the Cumberland property and at that time Mr. Dalton assured him that there would be no trouble about the driveway in the sale of the Pawtucket property.

It is undisputed that about the second week in November 1956 Mr. Henry called on the Daltons and requested that they execute an instrument which would have granted an easement in the driveway, with covenants for each of the parties to maintain one-half thereof and binding on them, their heirs and assigns forever. William Dalton, who at that time was seriously ill and died the following January, refused to execute the agreement stating that signing it was out of the question and he intended to close the driveway.

After the death of William Dalton in January 1957 relations between complainants and respondent apparently became strained. It appears from the testimony of complainants' daughter Dorothy L. Henry that until September 1957 complainants continued to use the driveway despite admit-

ted differences, but in that month she and Mrs. Dalton exchanged words and two days thereafter complainants were notified by Mrs. Dalton's attorney that, unless the wishes of his client regarding the use of the driveway were respected, permission for its use by complainants would be withdrawn. It does not appear in the record whether any discussions or conferences were had between the parties following receipt of this communication, but on December 4, 1957, complainants brought their bill of complaint.

The testimony of complainant William E. Henry was substantially corroborated by that of his wife and their daughter. Because of illness, respondent Jane E. Dalton was unable to testify at the trial, but her testimony was taken by deposition and was substantially corroborated by her son Raymond.

The parties differed in their testimony in that while the Henrys insisted that they had paid for the crushed stone, that maintenance of the driveway in such things as clearing it of snow was a joint venture without regard for boundary lines, and that the Daltons drove their car down the center, respondent and her son insisted that William Dalton paid for the crushed stone, that each family removed snow only from their respective portion of the driveway, and that the Daltons drove only on that part of the driveway constituting a part of their land. The trial justice found these conflicting statements were not material to the issue and we agree with him.

The complainants make no claim that they have acquired an easement by adverse use. They could not prevail on such a theory since it is undisputed that the use originated by permission. *Earle* v. *Briggs,* 49 R. I. 6; *Foley* v. *Lyons,* 85 R. I. 86, 125 A.2d 247. However, they contend that a license even though orally granted becomes irrevocable when the licensee, relying on the parol agreement, changes his position by making alterations on his property. They argue that in such circumstances withdrawal of the per-

mission by the licensor would constitute "fraud" within the meaning of proceedings in equity.

The complainants maintain that when they expended money and labor in bringing the grade of their property up to respondent's property and constructed a garage, ingress and egress to which depended upon the permanence of the license, they had changed their position in reliance upon their understanding with Mr. Dalton and by implication with respondent, so that the license became executed and by the rule adopted in some jurisdictions was irrevocable. They rely on a line of cases apparently beginning with *Rerick* v. *Kern*, 14 S. & R. (Pa.) 267.

In that case the respondent gave oral permission to the complainant to divert a stream of water and thus permit the complainant to construct a mill which after considerable expense apparently became very profitable. The Pennsylvania court held that, when the complainant relying on the respondent's permission expended money and labor, the license became executed and on the theory of estoppel could not be revoked. That principle has been adopted in some other jurisdictions, notably Ohio, Maine, New Hampshire, Oregon, Georgia, Minnesota and Indiana. The complainants have commended for our consideration decisions in the latter four of these jurisdictions, citing *Powers* v. *Coos Bay Lumber Co.*, 200 Ore. 329; *Shepard* v. *Purvine*, 196 Ore. 348; *Brantley* v. *Perry*, 120 Ga. 760; *Stoering* v. *Swanson*, 139 Minn. 115; *Indianapolis & Cincinnati Traction Co.* v. *Arlington Tel. Co.*, 47 Ind. App. 657.

They acknowledge that the authorities are divided on the question, but contend that this court indicated commendation of their contention in *Foster* v. *Browning*, 4 R. I. 47. That was an action of trespass for breaking and entering the plaintiff's close in which the court reversed the trial justice for instructing the jury that if the plaintiff's predecessor in title had orally licensed a right of way to Browning, and the latter relying on said license had expended

moneys in opening and building the way, the license thereby became irrevocable. This was an action at law and Ames, C. J., in speaking for this court, stated at page 52: "In Maine, New Hampshire, Pennsylvania, and Ohio, and perhaps in some other states, the exploded doctrine of some of the earlier English cases is still maintained at law upon equitable grounds of estoppel, and part-performance of a parol contract, which certainly from their inherent justice would commend themselves to our attention as a court of law, had we not full powers as a court of equity to do justice in a proper case of this sort when applied to on that side of the court."

It appears from the discussion by Ames, C. J. that the license to Browning, although parol, was to him and his heirs in perpetuity. In the instant case there was no definiteness as to time. We are convinced furthermore that the *Foster* case, as it relates to the case at bar, is authority only for the proposition that a contention such as that made by complainants here has no validity in law and could be advanced for consideration only in equity proceedings. We are persuaded that the rule contended for is in the minority and should not be adopted by this court.

We are of the opinion that in reason and justice the better rule is expressed in the case of *Crosdale* v. *Lanigan*, 129 N. Y. 604. There the plaintiff was required to remove a wall built on the property of the defendant pursuant to a license. The court stated the rule at page 610 as follows:

"* * * a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is, nevertheless, revocable at the option of the licensor, and this, although the intention was to confer a continuing right and money had been expended by the licensee upon the faith of the license. This is plainly the rule of the statute. It is also, we believe, the rule required by public policy. It prevents the burdening of lands with restrictions founded upon oral agreements, easily misunderstood. It gives secur-

ity and certainty to titles, which are most important to be preserved against defects and qualifications not founded upon solemn instruments. The jurisdiction of courts to enforce oral contracts for the sale of land, is clearly defined and well understood, and is indisputable; but to change what commenced in a license into an irrevocable right, on the ground of equitable estoppel, is another and quite different matter. It is far better, we think, that the law requiring interests in land to be evidenced by deed, should be observed, than to leave it to the chancellor to construe an executed license as a grant, depending upon what, in his view, may be equity in the special case."

The complainants call to our attention the case of *Weeden* v. *Babcock,* apparently decided in this jurisdiction, and of which some discussion is had by Ames, C. J. in *Foster* v. *Browning, supra.* It is not published in our reports and we are unable to discover that it is otherwise reported. In any event it would appear that in the *Weeden* case the complainant yielded up an existing easement in return for a promise from the respondent that an equally acceptable easement would be substituted for that surrendered by the complainant. No such circumstances are present in the instant case and for whatever authority *Weeden* v. *Babcock* may stand, it is not applicable to the case at bar.

Counsel for the complainants urge that the statute of frauds was conceived and is designed to protect against fraud and should not be used to assist in the perpetration of fraud. We are in accord with this contention, but are not convinced that in the circumstances of the instant case the respondent's revocation of the complainants' license is fraudulent within any acceptable definition of that term. The right which complainants seek to establish in the land of the respondent is essentially an easement and should be the subject of a grant, expressed in the solemnity of a written instrument. It is no hardship for one in the position of these complainants either to secure an easement in perpetuity in the manner provided by the statute, or, such

158

being refused, to weigh the advantages inuring to them as against the uncertainty implicit in the making of expenditures on the basis of a revocable license.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Goodman, Mackenzie, Gorin & Blease,* for complainants.

*Shannahan & Cunningham, James M. Shannahan, Matthew C. Cunningham,* for respondent.